## KANSAS CITY SOUTHERN RY. CO. v. MOLES.

### (Circuit Court of Appeals, Eighth Circuit. March 9, 1903.)

### No. 1,773.

**1. RAILROADS—ACCIDENT FROM KICKING CARS—RES GESTÆ.**

The statement of the conductor of a train, who was on the cars kicked onto the siding that caused the accident, that he knew the car was on the siding to be unloaded, but thought the workmen were at dinner, made at the time and place of the accident, while the cars were still in motion, and while plaintiff's leg was still pinioned—the crash of the cars and the cries of plaintiff and others having brought him to the spot instantly— is admissible as part of the res gestæ.

**2. SAME—OBLIGATION OF RAILROAD COMPANY—INSTRUCTIONS.**

While ice was being removed from a car to an icehouse by a slide, plaintiff, in the icehouse, was injured by the slide being moved by cars being kicked against the car. *Held*, that a requested instruction limiting the obligation of the railway company to exercise ordinary care in switching its cars to persons engaged in work in or about the cars on the track was too restricted.

**3. SAME—NEGLIGENCE.**

The jury was justified in finding that to send loaded cars by a flying switch onto a siding without warning, and without adequate means of controlling them, whereby a car is struck, and a person unloading it is injured, is negligence.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

The complaint alleges, in substance, that on the 12th day of July, 1900, the plaintiff, in company with Henderson and Dollarhide, at the invitation of the defendant railway company and W. S. Morris, entered a car loaded with ice, which had been set out on a side track at the town of Dequeen, Ark., for the purpose of unloading the ice into W. S. Morris' icehouse, situated a few feet from the side track on which the car stood; that for the purpose of unloading the ice the plaintiff was stationed in the icehouse to receive the ice as Henderson, who was in the ice car, sent it to him over a slide made for the purpose out of timbers fastened together by slats; that while so engaged in unloading the ice the trainmen of one of defendant's trains negligently caused the same to be pulled down the main track to the side track, and then negligently and suddenly, without any precaution, and without keeping any lookout whatever, and without any warning being given by bell or whistle or otherwise, kicked, shoved, or pushed a car from the main line up the side track into and against the car which plaintiff and his companions were unloading, with such force and violence that it propelled the car forward to such a distance that it caused the slide running from the icehouse to the car to catch the plaintiff's leg between itself and a sill of the icehouse, thereby causing a fracture of the bone of plaintiff's leg and laceration of the flesh, making a serious and severe wound; that the defendant and its agents and trainmen were aware of the presence of the plaintiff and his companions in the icehouse and car; that it was the custom of the defendant company to cause cars of ice to be set out on this siding for the purpose of being unloaded into this icehouse, and defendant knew that it was the custom for the ice to be unloaded there, and the trainmen and the agents of the company knew, or by the exercise of reasonable prudence would have known, of the presence of plaintiff at the time and place, and that the car was kicked up the switch track without any brakeman manning the same or to control its movements. The answer was a general denial and a plea of contributory negligence. The testimony substantially supported the case made

¶ 1. See Evidence, vol. 20, Cent. Dig. §§ 331, 365.

by the complaint, but went much more into detail. There was a trial to a jury, and a verdict and judgment for the plaintiff, and the defendant sued out this writ of error.

James B. McDonough (Gardiner Lathrop, Thomas R. Morrow, and James F. Read, on the brief), for plaintiff in error.

James D. Head (Oscar D. Scott, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned for error that the court permitted the plaintiff to prove the statements of the conductor concerning the accident, to the following effect: The witness Dollarhide testified as follows:

"Q. State to the jury what the conductor said when he got to you? A. He said he didn't want any of us to think hard of him; that he didn't intend to kill a man on purpose. Q. State all he said. A. He said he knew the car was set there for the purpose of being unloaded and he thought, it being noon, that we was to dinner."

Another witness testified that the conductor said:

" 'I thought you all had gone to dinner;' that he ought to have been on the lookout, but he thought we had gone to dinner."

These statements were made at the very time and place of the accident, while the cars were still in motion, and while the plaintiff's leg was still pinioned between the slide and the interior wall of the icehouse. The crash of the cars and the cries of the injured man and others brought the conductor, who was on the cars "kicked" in that occasioned the accident, to the spot instantly, and what he then said was clearly part of the res gestæ. Peirce v. Van Dusen, 24 C. C. A. 280, 78 Fed. 693, and cases cited in footnote.

No exception was taken to the charge of the court. The defendant preferred several requests for instructions, all of which were rightly refused. By the terms of the first request, the obligation of the railway company to exercise ordinary care in switching its cars was restricted to persons "engaged in work in and about the cars on the track." This was restricting the defendant's obligation within too narrow limits. Moreover, the charge in chief stated accurately and fully the degree of care the defendant was required to exercise.

The third and fifth requests relate to the defense of contributory negligence, but, as there was not a particle of evidence to support such a defense, they were rightly disregarded by the court. By the fourth and seventh requests the railway company, in effect, sought to apply to the case the doctrine of inevitable accident. Upon the proof in the case, it is difficult to treat such a suggestion seriously. The conductor who had charge of the defendant's train was called by the defendant as a witness, and testified:

"We had come to Dequeen at the dinner hour for dinner. We had two loads of ties to set out on the cotton track; and one of my head brakemen cut the cars off and kicked them in, and I rode them, and did not stop just in the clear, and they rolled down and struck the car which was supposed to hurt Mr. Moles."

Asked why he did not stop the cars, he answered, "They were heavy cars, and hard to stop."

The accident in this case resulted from that fruitful source of accidents—a running or flying switch—which has uniformly met with judicial condemnation, and which is prohibited by rule of some, if not all, railroad companies. Shearman & Redfield on the Law of Negligence (5th Ed.) §§ 461, 463, and cases cited; Beach on Contributory Negligence (2d Ed.) § 217; 1 Thompson on Negligence, 423, 452.

In this case, without warning to persons working on or near the track who were liable to be injured by the cars "kicked" in on the switch track, two cars loaded with ties were sent speeding down the track by a flying switch without any adequate means of controlling them, as the conductor of the train, who says he was riding the cars, admits.

The jury were entirely justified in finding that it was an act of negligence to make this flying switch under these circumstances, and that the railway company was liable to the plaintiff for the damages resulting to him therefrom.

The judgment of the Circuit Court is affirmed.