CROMEENES v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY.

No. 2044. Decided May 4, 1910 (109 Pac. 10).

1. RAILROADS—KILLING BOY ON STREET—EVIDENCE OF NEGLIGENCE. In an action for death of a boy killed by a train running along a street, evidence *held* to support a finding that it was operated in a negligent manner. (Page 484.)

2. RAILROADS—CARE IN RUNNING TRAIN—RIGHT TO PRESUME—DUTY OF PEDESTRIAN—USE OF DUE CARE. A pedestrian may act on the assumption that a railroad company will use ordinary care in running its train across public streets and along thoroughfares of thickly populated districts of a city; but this does not relieve him of the duty imposed to use due care for his own safety. (Page 485.)

3. RAILROADS—USE OF STREETS—DUTIES OF PERSONS AND RAILROAD COMPANIES. Rights and duties of persons and railroad companies in the use of streets are reciprocal.[1] (Page 485.)

[1] Spiking v. Con. Ry. & P. Co., 33 Utah, 313, 93 Pac. 838.

4. RAILROADS—KILLING BOY ON STREET—CONTRIBUTORY NEGLIGENCE—
QUESTION FOR JURY. In an action for death of a boy killed by a
train running along a street, his contributory negligence *held* under
the evidence to be for the jury. (Page 485.)

5. TRIAL—INSTRUCTIONS—CONSTRUCTION OF CHARGE AS A WHOLE.
All instructions must be considered together, and if, as a whole,
they correctly state the law applicable to issues, it is not error
that the law applicable to different questions involed is separately
stated. (Page 487.)

6. TRIAL—INSTRUCTIONS—CONSTRUCTION OF CHARGE AS A WHOLE. In
an action for death of a boy killed by a train running along a
street, the court charged that if the speed of the engine immedi-
ately before the accident was unusual and greater than ordinary
prudence would dictate in view of the neighborhood and dangers
likely to be encountered, and the engineer before striking him saw
the boy in a position where, as a man of ordinary prudence, skilled
in the business, he ought to have appreciated that he was in dan-
ger, and would have been able to stop if going at a speed dictated
by ordinary prudence, but could not do so because he was then
running at a negligent speed, the boy's death was caused by his
negligence. It was contended that this disregarded the defense
of contributory negligence; but in another part of its charge the
court, after defining "ordinary care," and instructing in general
terms what constituted contributory negligence, charged that, if
deceased was negligent within this definition, plaintiff could not
recover, though defendant may also have been negligent, and that
it was the duty of deceased to use all reasonable care as there-
inbefore defined to avoid injury. The court further charged that,
unless the jury found from a preponderance of the evidence that
defendant was negligent, plaintiff could not recover, or if they
found that defendant was negligent, but that deceased was also
guilty of negligence contributing directly to his death, plaintiff
could not recover, and that if they believed deceased stepped on
the track in front of the approaching train without looking or
taking any precaution, reasonably to be expected from a boy of
his age, experience, and discretion, to learn the approach of a train,
when but to look or otherwise use ordinary care would have dis-
closed to him the train's approach, he was guilty of contributory
negligence which barred recovery, and verdict should be for defend-
ant. *Held* that, while the court did not charge on contributory
negligence in the instruction complained of, the other instructions
carefully guarded defendant's rights so far as involved in that
issue, and, read together, the instructions were sufficient. (Page
487.)

7. APPEAL AND ERROR—OBJECTIONS FOR REVIEW—ADMISSION OF EVI-
DENCE. Objections having been properly made and exceptions taken
to a certain line of testimony, the objecting party, to save the ques-

tion for review, need not object to each question thereafter asked the witness concerning the same matter. (Page 488.)

8. TRIAL—RECEPTION OF EVIDENCE—OBJECTING TO TESTIMONY. Where a question asked of a witness does not indicate that the testimony sought is objectionable, it is not error to overrule objections thereto, and, if the answer contains objectionable testimony, the remedy is to move to strike it out. (Page 489.)

9. APPEAL AND ERROR—PRESENTATION OF GROUNDS OF REVIEW—OBJECTION TO TESTIMONY—NECESSITY OF MOTION TO STRIKE. Where, at the time of overruling objection to a question not indicating that testimony sought is objectionable, the court knows what the witness will answer, and then overrules the objection, it must be held that the testimony was admitted advisedly, and a motion to strike it out is unnecessary to present the objection thereto for review. (Page 489.)

10. EVIDENCE—RES GESTAE—STATEMENT CONNECTED WITH TRANSACTION. In an action for death of a boy killed by a train running along a street, there was evidence that a witness to the accident, who got off the train just before the boy was struck, stated that he walked the length of "a car or two" to where the engineer was standing and said to him: "You have done a damn fine job. Why didn't you stop before you ran over him?" *Held,* that the court did not err in admitting as *res gestae* what the witness said. (Page 490.)

11. EVIDENCE—DECLARATIONS AS "RES GESTAE." The test whether declarations are *res gestae* is: Were they the facts talking through the party, or the party talking about the facts? Instinctiveness is the requisite, and when this exists the declarations are admissible. (Page 490.)

12. APPEAL AND ERROR—HARMLESS ERROR—REMARKS OF COUNSEL. Prejudicial error cannot be predicated on remarks of counsel as to a witness against the complaining party, tending to minimize the effect of the witness' evidence, which from beginning to end was favorable to his adversary. (Page 496.)

McCARTY, J., dissenting in part.

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by J. W. Cromeenes against the San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Pennel Cherrington* for appellant.

*Powers & Marioneaux* and *J. W. McKinney* for respondent.

The appellant's claim is that all the rulings of the trial court on the question of contributory negligence were wrong, for the reason that the deceased should have been held guilty of contributory negligence as a matter of law. (*Gesas v. O. S. L. R. R. Co.,* 33 Utah, 156, 93 Pac. 274; *Cleveland, etc., R. R. Co. v. Tartt,* 64 Fed. Rep. 831; *Krenzer v. Pittsburg, etc., R. R.,* 68 Amer. State Reps. 252; *Wendell v. N. Y. Central, etc., R. R. Co.,* 91 N. Y. 420; *C. B. & Q. v. Laughlin,* 87 Pac. Rep. 749; *Gehring v. Atlantic City Ry.,* 14 L. R. A. [N. S.] 312; *Reynolds v. N. Y. Central, etc., R. R. Co.,* 58 N. Y. 248; *Tucker v N. Y. Central, etc., R. R. Co.,* 21 Amer. St. Rep. 670; *Ecliff v. W. St. L. & P. R. R. Co.,* 64 Mich. 196; *Masser v. C., R. I. & P. R. C. Co.,* 68 Iowa 602.) It would seem that the question asked by McHugh and the alleged silence of the engineer were admitted in evidence as a part of the *res gestae.* We have seen no text book or court decision giving a definition of *res gestae* that this evidence will fit. The question was asked subsequent to the killing of the boy; it did not elucidate that act in any way; did not explain it; did not describe it; did not qualify it; was no part of the act, nor was the act a part of it—it was merely the expression of the opinion of McHugh concerning the accident, expressed after the accident had happened, and was incompetent and immaterial as original testimony, since certainly the witness McHugh on the stand would not have been allowed to say that the engineer "did a damn fine job." The trial court knew that it was only an opinion, though it admitted the evidence. (Enc. of Evidence, 342; 16 Cyc., par. 2, p. 1148; *Kuperschmidt v. Metropolitan St. Ry. Co.,* 94 N. Y. Supp. 17; *Indianapolis St. Ry. Co. v. Whitaker,* 160 Ind. 125; *Indianapolis St. Ry. Co. v. Taylor,* 164 Ind. 155; *Leach v. O. S.*

*L. R. R. Co.,* 29 Utah, 285; 2 Jones on Evidence, sec. 361; Am. and Eng. Ency. of Law, 666, 94 Ala. 9; *Butler v. M. R. Co.,* 143 N. Y. 417; *Luby v. H. R. Co.,* 17 N. Y. 131; *Ganaway v. Salt Lake Dramatic Association,* 17 Utah, 37; *Missouri Pac. Ry. v. Ivy,* 9 S. W. 346 [Tex. Supreme Court]; *Dwyer v. Continental Insurance Co.,* 63 Tex. 354; *Goso v. Southern Ry. Co.,* 45 S. E. 810; *Welkins v. Farrell,* 30 S. W. 450 [Texas Civil Appeals]; *Blackman v. West Jersey, etc.,* 52 Atlantic, 370; *Citizen's Street Railway Co. v. Howard,* 52 S. W. 865; *Redmond v. Metrop. Street Railway Co.,* 84 S. W. 26; *Norris v. Interurban Street Railway Co.,* 90 N. Y. Supp. 460; *Dompier v. Lewis,* 91 N. W. 152; *Butler v. Railway Co.,* 143 N. Y. 417; *Chicago Street Railway v. White,* 110 Ill. App. 23; *Koenig v. Union Depot,* 73 S. W. 637; *Silveira v. Iverson,* 60 Pac. 687; *Lane v. Bryant,* 9 Gray, 245; *State v. Ramsey,* 48 La. Ann. 1407; *Travelers' Insurance Co. v. Shepard,* 85 Ga. 751; *Richmond & D. R. Co. v. Hammond,* 93 Ala. 181; *Hughes v. L. & N. R. Co.,* 104 Ky. 774; *Carr v. State,* 76 Ga. 592; *Beck v. State,* 76 Ga. 452; *Scott v. St. Louis, etc., Ry. Co.,* 112; Iowa, 54; *Dunn v. C., R. I. & P. Ry. Co.,* 130 Iowa, 580.)

### RESPONDENT'S POINTS.

With respect to a street railroad, the mere fact that a person attempts to cross it when a car is seen to be approaching does not of itself constitute negligence, . . . ordinarily, whether or not he was negligent in attempting to cross, under the circumstances of the case, is a question for the jury. (*Spiking v. Con. Ry. & P. Co.,* 33 Utah, 313, 93 Pac., pp. 840-841.) The boy had the right to assume that the cars would be run with ordinary care on the public street. (*Fult v. Wyckoff,* 25 Ind. 321; *Parrott v. Barney,* Fed. cases, No. 10773, 82 U. S. [15 Wallace], 524; *Newson v. N. Y. Cent. R. R.,* 26 N. Y. 383; *Snyder v. Pittsburgh, etc., Ry. Co.,* 11 W. Va. 14.) It has become a settled rule of law in this state that the child is not negligent if he exercised that degree of care which under like circumstances

would be expected of one of his years and capacity. And whether he uses such care in any given case is a question to be left for the jury to decide. (*Anderson v. R. R.*, 81 Mo. App. 116; *Riley v. Railroad*, 68 Mo. App. 652; *Burger v. R. R.*, 112 Mo. 249, 20 S. W. 439, 34 Am. St. Rep. 379; *Anderson v. R. R.*, 161 Mo. 1411, 61 S. W. 874.)

McCARTY, J.

This action was brought to recover damages for the death of plaintiff's son, who was run over and killed by a train of the defendant on Third West Street, in Salt Lake City, Utah, on May 22, 1907. The negligence alleged by plaintiff consisted in the failure of defendant to ring the bell on its locomotive in accordance with an ordinance of the city then in existence; to give any warning of the approach of the locomotive, which was being run at a high and dangerous rate of speed; and to keep a sufficient lookout for pedestrians. Defendant, in its answer, denied all the acts of negligence set out in the complaint, and further alleged that that the death of the deceased was due to his own negligence' in suddenly and unexpectedly stepping upon the railroad track of the defendant immediately in front of the engine by which he was killed, and so close thereto that the defendant's employees thereon had no opportunity to stop the same before striking him, although the deceased, had he looked for the approaching train, had a clear and unobstructed view thereof. The case was tried to a jury, who returned a verdict for plaintiff and assessed his damages at $4000. To reverse the judgment rendered on the verdict, defendant prosecutes this appeal.

The accident complained of occurred on Third West Street a short distance south of the intersection of said street with Sixth South Street, in Salt Lake City. It is admitted that "both sides of the street, in the vicinity of the accident, were thickly populated with adults and children." At the time of the accident, which was about five o'clock in the afternoon, two freight trains were being operated on Third West Street. One, an Oregon Short Line train, was being

run north on the west track, and the other train consisting
of an engine and caboose, which belonged to the defendant,
was being run south on the east track; there being two par-
allel tracks on said street. The distance between the tracks
was about eight feet. Plaintiff and his family, including
the deceased, were living and for a period of about eighteen
or twenty months prior to the accident had lived, on the
west side of Third West Street, near where the accident
occurred, during which time several regular trains passed
daily over the railroad tracks mentioned. Shortly before
the accident, the deceased, who was a bright, intelligent
boy, twelve years of age, left his home and went over to a
grocery store on the east side of the street. As he was re-
turning to his home, the Oregon Short Line train came up
from the south on the west track and he stopped in the
street east of the west track and about ninety or one hun-
dred feet south of the south line of Sixth South Street
watching the train from the south and evidently waiting for
it to pass. While the deceased was thus standing and waiting
for the Oregon Short Line train to pass on to the north,
he was struck by defendant's train, which was coming from
the north on the east track. There is a conflict in the evi-
dence as to the exact location of the deceased with reference
to the railroad tracks when he was struck by defendant's
engine.

The only witness who saw the deceased struck was George
McHugh, a switchman for the Oregon Short Line company,
who, at the time of the accident, was on the train going
north, which train consisted of an engine and fifteen freight
cars. McHugh was on the third car from the rear of the
train. When this car was at ·Seventh South Street, Mc-
Hugh saw the other train coming south on the east track,
and he testified that he saw the boy at about the same time
as he did the train; that the boy was crossing the street
to the west; that when he got between the two tracks he
stopped near the west rail of the east track; that on observ-
ing the boy he began signaling with his hands to the opera-
tives of the train coming from the north on the east track;

37 Utah—31

that he also tried to attact the attention of the boy at the same time; that it seemed that he "attracted the attention of the men on the train from the north as they slowed up; they came pretty near to a standstill, but they hit the boy;" that after striking the boy the train passed on until the rear end thereof was opposite or near where the boy was lying after being killed. Counsel for appellant have, in their brief, invited attention to some expressions in the testimony of this witness, which, standing alone, would seem to indicate that the deceased was standing between the rails of the east track when he was struck by the train. By an examination of the testimony of the witness, as the same appears in the bill of exceptions, it will be seen that his attention, while testifying, was called to some kind of a diagram or map that was sketched or drawn on a blackboard representing the street and railroad track at the point and in the vicinity of where the accident happened, and at times he became very much confused and did not seem to understand which direction was east and which was west on the map. The apparent discrepancy in his testimony as to where the deceased was standing when struck by the engine, we think, was due to the inability of the witness to understand the map or sketch of the premises as it appeared on the blackboard. In his direct examination he testified, in part, as follows: "Q. Now, will you tell the jury about where the boy was standing at that time? A. Standing on the west side of the east track. . . . Q. And between the two tracks? A. Yes, sir." On cross-examination he stated repeatedly that the deceased, when struck by the engine, was standing west of the east track.

Plaintiff also introduced testimony from which it could be fairly inferred that the operatives of the defendant's train saw the deceased when the engine was about the center of Sixth South Street, which, according to the undisputed evidence, is from 150 to 160 feet north from the point where the accident occurred.

The testimony of the engineer and fireman, who were operating defendant's train at the time of the accident, tended

to show that the deceased was standing between the rails of the east track, and that the train was going at the rate of about eleven or twelve miles an hour. The fireman testi-fied that he first saw the deceased as the engine was cross-ing the south line of Sixth South Street; that the deceased was crossing the street walking west; and that he stepped upon the track when the engine was within about thirty feet of him. The engineer testified on this point, in part, as follows: "As we crossed Sixth South Street, I was looking ahead of the engine. . . . Just after we got over the south side of Sixth South Street crossing, the fireman said, 'Look out!' I was looking out and didn't see anything, so I looked over at him to see what he meant. . . . Then I looked back at the tracks, and this is when I saw the boy step over the rail. . . . I applied the air and blew the whistle. . . . I put the air into emergency. That means setting the air brakes to the full capacity. . . . He was then between thirty and forty feet ahead of the engine. . . . I didn't see the boy at all before he got on the tracks. He was just stepping over the rail as I saw him. I know he hadn't been on there before because I had been looking ahead. I didn't see him until I was south of Sixth South Street." The engineer and fireman of defendant's train also testified that as the train approached Sixth South Street the whistle was blown, and that the bell was rung continuously until after the deceased was struck. On the other hand, one of plaintiff's witnesses testified that the train, as it crossed Sixth South Street, was running at the rate of eighteen or twenty miles an hour. Two other of his witnesses testified that it was going from twenty-five to thirty miles an hour. And the testimony of practically all of his witnesses tended to show that the bell was not rung prior to the time the deceased was struck by the engine.

It was stipulated that at the time of the accident an ordi-nance of Salt Lake City was in force which provided that: "It shall be unlawful for any person employed on a locomo-tive to fail to continuously ring the bell of such locomotive while in motion in the inhabited portions of the city." It

was further stipulated that, by virtue of a franchise from the city, the defendant had a lawful right to run its trains on Third West Street and along both of said tracks.

As is usual in this class of cases, there is a sharp conflict in the evidence on the material issues in the case. We are of the opinion that there is ample evidence to support a finding that defendant's train was, on the occasion in question, operated in a careless and negligent manner; and, while counsel for the railroad company do not admit that the company was guilty of negligence, yet they do not claim that there is not sufficient evidence to support a finding to that effect. Therefore we will not refer further to that issue of the case.

Appellant's first assignment of error relates to the refusal of the court to direct a verdict in its favor. It is contended that the undisputed evidence in the case shows that the deceased was, as a matter of law, guilty of contributory negligence. We think this contention is untenable. The accident occurred on one of the public streets of the city where the deceased had as much right to be as appellant had to run its cars, with the exception that when they were both upon the street at the same time appellant had the prior right of passage. When the deceased was first seen by the witness McHugh, he was in the act of crossing the street going in the direction of his home. At this time McHugh was at Seventh South Street, and, as we have heretofore observed, he was on the third car from the rear of the train; there being fifteen cars in the train. It necessarily follows that the head of the train was some distance north of Seventh South Street when the boy was first observed by McHugh, and we think it may be fairly inferred from these facts, when considered in connection with the evidence of McHugh wherein he says: "I said I didn't see where he came from, but he was walking in there and was standing there as our train passed by going north, looking right at our train as it passed by him. . . . He couldn't go any farther on account of our train"—that the head of the train going north was near to, if not directly in front of, the

deceased when he stepped between the two tracks evidently
waiting for it to pass on to the north so that he could con-
tinue on his way home.   Now, if defendant's train was
traveling at the rate of twenty-five or thirty miles an hour—
and there is abundant evidence in the record to support a
finding to that effect—we think it may be fairly inferred
that the train was a considerable distance north of Sixth
South Street when the deceased started to cross the street
in the direction of his home.   And there is sufficient evidence
to support a finding that the train could have been stopped
in time to have avoided the accident if it had not been
going at an unreasonable and dangerous rate of speed, and
the engineer and fireman had kept a proper lookout ahead as
they approached and crossed Sixth South Street.   The de-
ceased had a right to assume, and to act on the
assumption, that defendant would use ordinary care   **2, 3**
in running its train across the public streets and along
the thoroughfares of the thickly populated districts of the
city.   This, however, did not relieve him of the duty which
the law imposes on people, generally who have occasion to
go upon or to cross railroad tracks, to use due care for
their own safety.   As was said in the case of *Spiking v.
Con. Ry. & P. Co.*, 33 Utah, 313, 93 Pac. 838, the rights
and duties of persons and railroad companies in the use of
streets are mutual and reciprocal.   As to whether the de-
ceased used the same degree of care and caution in entering
upon and crossing defendant's railroad track that would be
expected generally of persons of his age, intelligence, and
experience, under the same or similar circumstances,
we think was a question of fact for the jury to deter-       **4**
mine.   To hold, in the face of the evidence in this case,
which, for the purposes of this appeal, must be viewed and
considered in the light most favorable to respondent, that
the deceased was, as a matter of law, guilty of contributory
negligence, would tend to establish a rule, the effect of
which would be to cast the whole duty upon the people,
who have occasion to go upon the public streets which are in
part occupied by railroad companies in the maintenance of

tracks and the moving of trains, of avoiding collisions and injuries. And, furthermore, to so hold would, to a large extent, deprive the public of the protection which the law, by imposing on railroad companies the duty to use ordinary care in moving their trains across public streets aand along the thoroughfares of thickly populated districts of our towns and cities, is designed to give. This we have no disposition to do.

The court, among other things, charged the jury as follows: "You are further instructed that if you believe from the evidence that the speed at which the engine in question was being run immediately before the accident was unusual and greater than ordinary prudence would have dictated in view of the neighborhood and of the dangers likely to be encountered, and that the engineer saw the boy, before striking him, in a position where he (the engineer) ought, as a man of ordinary prudence, skilled in the business to have appreciated that the boy was in danger, and would have been able to stop the engine had it been going at a speed dictated by ordinary prudence, but could not stop because he was running the engine, when he saw the boy's peril, at a speed which was negligent, then the death of the boy was caused by the negligence of the engineer."

The giving of this instruction is assigned as error. It is contended that the court, by giving this instruction, "entirely disregarded the defense of contributory negligence." The court, in another part of its charge, after defining the term "ordinary care," and instructing the jury in general terms as to what constituted contributory negligence, charged the jury as follows: "If the jury finds from the evidence that the deceased, Charles Raymond Cromeenes, was careless and negligent within this definition, the plaintiff cannot recover even though the defendant may also have been negligent. It was the duty of the deceased to be careful and to use all reasonable care, as hereinbefore defined, to avoid injury to himself." The court further charged the jury that, "unless you find from a preponderance of the evidence that the defendant was negligent, the plaintiff cannot re-

cover; or, if you find from the evidence that the defendant was negligent, but that the deceased was also guilty of negligence which contributed diectly to his death, then the plaintiff cannot recover." The court also instructed the jury as follows: "The court instructs you that if you believe from the evidence that the deceased stepped upon the track in front of the approaching train without looking or taking any precaution such as would reasonably be expected from a boy of his age, experience, and discretion, to learn of the approach of an on-coming train, when but to look or otherwise use ordinary care would have disclosed to him the train's approach, he was guilty of contributory negligence which bars a recovery for his death, and your verdict should be for the defendant." It will thus be observed that the court, while it did not charge the jury on the question of contributory negligence in the instruction complained of, nevertheless did give other instructions in which it carefully guarded the rights of the defendant, so far as they were involved in that issue. It is a familiar rule of law that all the instructions must be read and considered together, and if, as a whole, they contain a correct statement of the law applicable to the issues in a case, the court cannot be convicted of error because the law applicable to the different questions involved is separately stated. In such case the instructions supplement each other, and if, when read and considered as a series they contain a correct statement of the law, it is sufficient.

Appellant's next assignment of error relates to the admission in evidence of a statement made by the witness McHugh to the engineer on defendant's train immediately after the accident occurred. McHugh testified that the train he was on stopped a little before the deceased was struck; that he got off the train and walked the length of "a car or two" to where the engineer was standing. Plaintiff's counsel then asked the witness the following question: "What did you say to the engineer?" Counsel for defendant objected to the question on the ground that it was incompetent and immaterial. In response to the objection, the court said:

"The question is whether it is a part of the *res gestae*. Prima facie it would seem that it was. There is no statement from the witness as to how long a time elapsed. It seems it must have been very soon afterwards." The witness was then further interrogated respecting the length of time between the happening of the accident and when he spoke to the engineer, and, after substantially repeating the testimony that he had already given on this point, he was asked the following question: "What did you say to the engineer, and what did he say to you?" Counsel for defendant objected to this question as follows: "I renew the objection. It is immaterial and irrelevant, and not part of the *res gestae*. It is not connected with the thing at all." Counsel for plaintiff then stated to the court: "I have shown the court what the answer was in the other trial." The court replied: "The question, in the mind of the court, is, it seems to have been simply an opinion." In response to the remarks of the court, counsel for respondent said: "The important thing is what the engineer failed to say. It was up to him." The objection was overruled, to which ruling appellant duly excepted. Counsel for respondent then renewed the examination of the witness as follows: "Q. What did you say to him? A. I says: 'You have done a damn fine job. Why didn't you stop before you ran over him?' Q. What did he say to that? A. I didn't hear him say anything."

No further questions were asked the witness on this point. Nor did appellant renew its objection to this line of testimony. Nor did it move to strike out the testimony elicited by the last two questions. Respondent now contends that, as appellant did not interpose an objection to the last two questions, nor move the court to strike out the answers made thereto, no exception was properly saved to the admission of this testimony, and hence there is nothing for the court to review under this assignment of error. Objections having been properly made and exceptions taken to this line of testimony, appellant was not required, in order to save the question for review, to object to each question thereafter asked the witness concerning the same

matter covered by the objections already made. (Spelling New Tr. & App. Pro., sec. 296; 8 Ency. Pl. & Pr. 229; *Magee v. North Pac. C. R. Co.*, 78 Cal. 430, 21 Pac. 114, 12 Am. St. Rep. 69; Jones on Ev., sec. 897; *Gilpin v. Gilpin*, 12 Colo. 504, 21 Pac. 616.)

Respondent further contends that the question did not necessarily call for inadmissible testimony, and that therefore appellant should, if. he desired to save an exception to the admission of the testimony given in answers to the questions, have moved the court to strike it out, and, not having done so, the question is not properly before this court for review. The general rule seems to be that where a witness is asked a question, and the question itself does not indicate that the testimony sought to be elicited thereby is incompetent, or otherwise objectionable, it is not error for the court to overrule the objections made thereto. If the answer contains testimony that is objectionable the remedy of the party objecting is to move the court to strike out that which is improper. The reason for the rule undoubtedly is that the court, in such case, has no means of determining, before the question is answered, whether the testimony sought to be elicited is or is not admissible. But this is not that kind of a case. It appears from the record that some time prior to the trial of this case there had been another trial in which the death of the deceased was an issue, and that McHugh was called as a witness and testified in that case. And before the ruling here complained of was made, the court's attention was called to an answer made by McHugh to the same, or a similar, question propounded to him "in the other trial." And, furthermore, counsel for respondent, at the time the objection was made, stated to the court that the "important thing" he expected to show by this testimony was "what the engineer failed to say." It therefore appears that both court and counsel were fully advised, before the court ruled on appellant's objection, as to the character of the testimony the witness would give if permitted to answer the question. The court having admitted the testimony advisedly,

no motion to strike out was necessary. Under the circumstances, the situation is the same as though the respondent had offered, at the time the objection was made, to prove the very thing complained of, and the court had permitted him to do so over appellant's objection.

This brings us to the more improtant question presented by this appeal, namely, did the court err in admitting evidence of the statement made by McHugh to the engineer immediately after the accident occurred? My associates are of the opinion that what McHugh said to the engineer on that occasion was admissible in evidence as a part of the *res gestae*, and that the court did not err in so holding. I take an entirely different view of the question, and am of the opinion that the ruling of the court, under the great weight of authority, cannot be upheld on that ground. In view of the importance of the principle involved in the ruling complained of, and the bearing such ruling may have upon cases involving the same question that may hereafter come before the courts of this state, I have decided to briefly discuss this phase of the case . To bring the declarations of a party within the doctrine of *res gestae*, they must be connected with, and grow out of, the act or transaction which is the subject-matter of inquiry so as to form one continuous transaction, and must, in some way, elucidate, qualify, or characterize the act, and, in a legal sense, be a part of it. (*Leach v. Railroad*, 29 Utah, 285, 81 Pac. 90, 110 Am. St. Rep. 708.) "The test of whether or not declarations are *res gestae* is: Where the facts talking through the party, or the party's talk about the facts? Instinctiveness is the requisite, and when this exists the declarations are admissible." (7 Words and Phrases, 6136.) Upon this proposition the authorities all agree. There is, however, a conflict in the authorities as to whether declarations made by a mere bystander or onlooker are admissible as a part of the *res gestae;* all other conditions necessary to make them admissible as such being present. But I think the weight of authority is to the effect that the party, making the declaration must in some way be an actor or par-

ticipant in the transaction or event to which his declaration relates. "The comments and criticism of mere bystanders cannot be proved." (Gillett on Ind. & Collat. Evi. 290; 24 A. and E. Ency. L. (2 Ed.) 681, 686; 7 Words and Phrases, 6131; Underhill on Crim. Evi. 125, 126; *Ganaway v. Salt Lake Dramatic Ass'n,* 17 Utah, 37, 53 Pac. 830; *Indianapolis St. Ry. Co. v. Taylor,* 164 Ind. 155, 72 N. E. 1045; *Kuperschmidt v. Met. St. Ry. Co.,* 47 Misc. Rep. 352, 94 N. Y. Supp. 17; *Louisville Packet Co. v. Samuels' Adm'x* [Ky.] 59 S. W. 3; *Kaelin v. Commonwealth,* 84 Ky. 354, 1 S. W. 594; *Senn v. Southern Ry Co.,* 108 Mo. 142, 18 S. W. 1007; *Flynn v. State,* 43 Ark. 293; *Dixon v. Northern Pac. Ry. Co.,* 37 Wash. 310, 79 Pac. 943, 68 L. R. A. 895, 107 Am. St. Rep. 810; *Wilkins v. Ferrell,* 10 Tex. Civ. App. 231, 30 S. W. 450; *Leahey v. Cass Ave. & F. G. Ry. Co.,* 97 Mo. 173, 10 S. W. 895, 10 Am. St. Rep. 298; *Ehrhard v. Met. St. Ry. Co.,* 69 App. Div. 124, 74 N. Y. Supp. 551; *Chicago City Ry. Co. v. White,* 110 Ill. App. 23; *Gosa v. Southern Ry.,* 67 S. C. 347, 45 S. E. 810; *Railroad Co. v. Le Gierse,* 51 Tex. 189; *Dwyer v. Continental Ins. Co.,* 63 Tex. 354; *Louisville R. R. Co. v. Johnson* [Ky.] 115 S. W. 207, 20 L. R. A. [N. S.] 133.)

I do not wish to be understood as holding that the party making a declaration must necessarily be a victim of the transaction, or have some responsibility connected therewith, or personal or special interest therein, to be an actor or participant in such transaction. A bystander may, during the happening of an act or event, become an actor or participant therein. If on such occasion he makes a declaration that has a bearing or influence upon one or more of the events leading up to and surrounding the principal transaction, and such declaration tends to explain, elucidate, or characterize the act or transaction under investigation, it is generally admissible as a part of the *res gestae.* (11 Ency. Ev. 338, and cases cited in note; Gillett on Ind. and Collat. Ev. 290; *Baker v. Gausin,* 76 Ind. 321; *Morton v. State,* 91 Tenn. 437, 19 S. W. 225; *Gillam v. Sigman,* 29 Cal. 638; *Kleiber v. People's Ry. Co.,* 107 Mo. 240, 17 S. W. 946, 14 L. R. A. 613; *Rail-*

*way Co. v. Murray,* 55 Ark. 248, 18 S. W. 50, 16 L. R. A.
787, 29 Am. St. Rep. 32; *State v. Kaiser,* 124 Mo. 651, 28
S. W. 182.) I also invite attention to an eleborate discus-
sion of this question found in a note to *Louisville v. John
son, supra,* reported in 20 L. R. A. [N. S.] 133, where
many cases are cited and discussed.)

Tested by the foregoing rules, I think the satement made
by McHugh to the engineer was clearly inadmissible. He
did no act which contributed to the unfortunate occurrence,
and was in no way connected with the happening of it ex-
cept as a mere observer or spectator. Nor did the statement
made by him to the engineer tend to explain or illustrate
any fact or circumstance leading up to or in any way con-
nected with the accident. True, he testified that, when he
saw defendant's train approaching from the north and real-
ized the danger the deceased was in because of the approach-
ing train, he made signals with his hands and arms and en-
deavored to attract the attention of the engineer and fireman
on the train as well as that of deceased. What he did prior
to the accident in endeavoring to attract the attention of the
engineer and fireman to the perilous situation of the boy was
admissible in evidence as tending to show negligence on the
part of the parties in not keeping a proper lookout ahead
of their train as it proceeded along this public and much
used thoroughfare. But what McHugh said to the engineer
after the boy was killed was, at most, only his opinion or
conclusion respecting a past transaction, and in no way tend-
ed to explain, qualify, or illustrate any act or omission of
either of the operatives of the train, or of the boy. The first
part of the declaration was nothing more than a criticism of
what had been done, and the latter part of it a mere inquiry
in regard to a material fact in the case. Therefore, under
all the authorities as I read them, the statement was inadmis-
sible as *res gestae.* And, furthermore, the record shows Mc-
Hugh's statement to the engineer was not introduced for the
purpose of explaining, illustrating, or characterizing the
transaction, or any phase of it, but was introduced for the
purpose of showing that the engineer made no reply thereto.

It is plain that the silence of the engineer, and his failure to reply to the remarks, criticisms, and inquiry made by Mc-Hugh after the transaction was ended, in no way tended to illustrate or explain any fact or circumstance material to the issue. Moreover, the engineer was not required to reply to what McHugh said. (*Blue Ridge L. Co. v. Price,* 108 Va. 652, 62 S. E. 938; *Luby v. Hudson Riv. Ry. Co.,* 17 N. Y. 131; *Chicago City Ry. Co. v. White,* 110 Ill. App. 23; *Adams v. Railroad,* 74 Mo. 553, 41 Am. Rep. 333; *Vicksburg & Meridian Railroad v. O'Brien,* 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299.) He was no more called upon to answer McHugh on that occasion than he would have been had McHugh met him on the street a week after the accident and made a similar statement to him. (*Barker v. St. L., I. M. & S. Ry. Co.,* 126 Mo. 143, 28 S. W. 866, 26 L. R. A. 843, 47 Am. St. Rep. 646.)

Suppose, for example, that, immediately after McHugh made the statement referred to, some other bystander or on-looker had exclaimed to the engineer, "Mr. Engineer, the boy started to cross the track when the train was within a few feet of him," and another spectator had declared to the engineer, "The care with which you were operating and moving the train prior and up to the time the boy as struck, and the alertness and celerity with which you acted when the boy started towards the track, were commendable," and another observer of the transaction had said to him, "The boy entered upon the track when the train was within a few feet of him, but you did all that could be done under the circumstances to avert the accident." I do not think that it will be seriously contended that declaration such as I have suggested would be admissible in evidence. And yet it must be conceded that any one of them would be as much a part of the *res gestae,* had it been made on that occasion, as the exclamation of McHugh to the engineer. To further illustrate: Suppose the engineer, in reply to McHugh's declaration, had said: "The train was going not to exceed eight miles an hour, the bell was ringing, and I was keeping a vigilant lookout ahead. The boy stepped upon the track when the

engine was within a few feet of him. I did all in my power
to stop the train before he was hit, but was unable to do
so." Would it be contended that this would have been avail-
able to the defendant in its defense? Certainly not, because
it is apparent that any explanation the engineer might or
could have made in response to the inquiry made by McHugh
would, under the circumstances, have been a mere narration
of a past and completed transaction only. In other words,
it would be a case of a party speaking about the event, rather
than a case of the event speaking through the party. The
authorities uniformly hold that statements which are only
a narration or history of completed transactions are never
admissible in evidence as a part of the *res gestae*. The fol-
lowing are a few of the many authorities that illustrate and
support this rule: 24 A. and E. Ency. L. (2d Ed.) section
110; Gillett on Ind. and Collat. Evi. section 263; Underhill
Crim. Evi. p. 120; 2 Jones, Evi. section 348; Wharton,
Crim. Ev. (9th Ed.) 264; 16 Cyc. 1258, 1259; 2 Rice,
Evi. p. 387; 1 Elliott, Evi. sections 539, 543; *People v.
Davis,* 56 N. Y. 95.

Now, if I am right in my conclusion that any explana-
tion the engineer might have made to McHugh's inquiry
would have been inadmissible, it necessarily follows that the
question itself was inadmissible.

The views herein expressed are not in conflict with the
general rule announced in the cases, with possibly one or two
exceptions cited in the opinion written in this case by the
Chief Justice. In nearly every case cited by the Chief Jus-
tice, the declarations were made by a party who was either
a victim of the event or transaction under investigation, or
by some one who was to some extent instrumental in bring-
ing it about, or had some responsibility in connection with the
matter, or by a bystander who had become an actor or partici-
pant in the sense as I have hereinbefore stated. Nor is what
I have herein said at variance with the rule declared by the
authorities, except as to a few cases cited in the notes to the
case of *Louisville v. Johnson, supra,* in support of the con-
clusions therein reached by the annotator. A large number

of criminal cases are cited in the notes referred to, and some seven or eight of these cases are cited by the Chief Justice in the opinion written by him. But in nearly every criminal case cited by the Chief Justice the declarations were either made by the victim of the affray or by the defendant, or some one in the presence and hearing of the defendant, and in some cases the statements were made directly to the defendant. Therefore they are not directly in point on the questions here involved. The rule is well settled that declarations of a person not a party to the affray or transaction constituting the crime charged, made at the time or immediately after its commission in the hearing of the defendant which tend to illustrate, explain, or characterize any fact or circumstance material to the issue, are admissible in evidence.

The general rule is well and tersely stated in 21 Cyc. 943, as follows: "On the trial of an indictment for murder, declarations made by the deceased shortly after receiving the fatal wound may be admitted in evidence as part of the *res gestae,* although they were not made in the presence of the defendant." On page 944 of the same volume, it is said: "Declarations of third persons are as a rule not admissible, but a statement made directly to defendant with reference to the crime, and to be judged by his conduct, may be admissible as a part of the *res gestae.*" The criminal cases cited in the notes referred to, and in the opinion written by the Chief Justice, in the main, illustrate this general rule. In the case of *Young v. State,* 149 Ala. 16, 43 South. 100, cited by the Chief Justice, where a bystander said, "Come back, it was an accident," the defendant, in response to the declaration, immediately returned. And, as stated in the opinion, "it was competent as showing, or tending to show, the conduct or demeanor of the defendant at or about the time of the shooting." So in the case of *People v. McArron,* 121 Mich. 1, 79 N. W. 944, the declaration, "now, see what you have done!" was addressed to the defendant by his mother immediately after his affray with the deceased, to which the defendant replied, "I will show him." In *State*

*v. Kaiser,* 124 Mo. 651, 28 S. W. 182, the declaration: "Hurry up! They have about killed this man"—was made under the following circumstances by a woman who was a witness to the affray: The woman had a controversy with the defendant Kaiser about the affray while he and the other two assailants were in the act of beating the deceased. She thought, as they were leaving the scene of the crime, that Kaiser was going to strike her, and she "hurried up and rushed into Mr. Van Phul's arms" and made the declaration referred to. The court, in the course of the opinion, says: "It was an exclamation made by a person on the spot, in the presence of the assaulted man, and while his assailants were yet in sight, just leaving their victim, and when the witness who heard the exclamation, the dying man, the woman who made the exclamation, and the fleeing assailants were still within fifty feet of each other." Under these circumstances, the women herself was in a certain sense an actor and a participant in the transaction. If the engineer in the case at bar had been charged with and was on trial for criminal negligence for causing the death of the boy Cromeenes, the rule as stated in 21 Cyc. 943, 944, and announced in nearly all of the criminal cases cited by the Chief Justice, might have some application. But as this is a civil action in which the engineer is not even a party defendant, the authorities last referred to, in the main, neither support nor controvert the views herein expressed.

Appellant also assigns as error certain remarks made by one of the attorneys for respondent in his argument to the jury, to which remarks appellant, at the time, duly excepted. While I am of the opinion that counsel, in his reflections upon and criticisms of McHugh as a witness, went to the very border, if he did not exceed the limits, of legitimate and proper discussion, yet McHugh being respondent's principal witness, and the one upon whose evidence he mainly relied for a recovery, and there being nothing in the record, as I read it, to justify an inference that he was an unwilling witness, the argument was prejudicial, if at all, to respondent rather than to

appellant, as its natural tendency was to minimize the effect of McHugh's evidence, which from the beginning to the end was favorable to respondent. Furthermore, while I am of the opinion that, as an abstract proposition, it was error for the court to admit evidence of the statement made by McHugh on the occasion referred to, I am as clearly of the opinion that it was not prejudicial error. At the time the evidence was offered, counsel for respondent in answer to the objection made by appellant to its admission, stated to the court, in the presence and hearing of the jury, that "the important thing is what the engineer failed to say; it was up to him." The evidence having been offered for that purpose only, I fail to see wherein it could have prejudiced the rights of appellant. The only possible effect detrimental to appellant's interests that can be claimed for McHugh's statement to the engineer, and the remarks of counsel complained of, under the circumstances, is that they tended to arouse the passions and prejudices of the jury against appellant to such an extent as to influence their verdict. I am of the opinion, however, that the verdict itself which, under all the facts and circumstances, is not at all excessive, shows conclusively that the matter complained of could have had no such effect on the jury.

There being no prejudicial error in the record, the judjment is affirmed, with costs to respondent

STRAUP, C. J. (concurring). I concur in the result affirming the judgment. What principally causes our disagreement relates to the action of the court overrulling the objection to the question propounded to the witness McHugh. I think no error was committed in the ruling. McHugh was a brakeman on the train going north. He saw the train running south approaching the deceased. He saw the deceased walking toward and standing near the track. He saw, what was apparent to any one seeing what he saw, the perilous situation of the deceased. He swung his arms and shouted to attract the attention of the engineer of the

approaching train, and also of the boy. He further testified
that he apparently attracted the attention of the engineer,
for the train slowed down, but ran on and hit the boy;
that the train, on which the witness was, stopped a little
before the other train ran over the deceased; that as soon as
that happened it also stopped; and that the witness then a
few car lengths away, immediately went up to the engineer,
who was standing in the gangway, and said: "You have
done a damn fine job. Why didn't you stop before you ran
over him?" From the situation disclosed by the evidence,
the question propounded to the witness apparently called for
something which might well be of the *res gestae*. That is, it
cannot be said that the main transaction had so completely
ended that the question propounded could not call for a
declaration or statement prompted by or made under the
immediate and present influences of the principal transac-
tion or main event, and so related thereto as to characterize
or explain it. It is well settled that it is not error to over-
rule an abjection to a question when the answer may or may
not be admissible. This is conceded; but it is said that the
trial court, when the ruling was made, had before it the
answer which the witness had made at a former trial
in response to a similar question, and that the court
therefore knew what answer the witness would make if per-
mitted to answer. The record shows that the answer made
by the witness at the former trial was shown to the court.
But the question which was propounded to the witness and
the answer which was made by him at the former trial is
not in the record. I therefore do not know what the answer
was that the court looked at. I cannot assume that the
witness answered the same at both trials. We know wit-
nesses frequently do not do so. Whatever presumptions
in that regard may be indulged, those which are in favor of,
and not those against, the ruling ought to be indulged.
Appellant has the burden of specifically showing the alleged
error by the record, not by presumptions or inferences.

Furthermore, I think the answer was properly received
under the *res gestae* rule. It is said that it was not proper

(1) because the declaration was that of a bystander or observer, and not that of an actor or participant, or of one connected with the preceding circumstances or transactions to which the declaration related, and (2) because the declaration was a mere criticism, or comment, or opinion, of the declarant, and that, too, of a bystander or mere observer. The general limitations of the *res gestae* rule, so far as necessary here to be noticed, are: (1) The declaration or utterance must be spontaneous or instinctive; (2) it must relate to or be connected with a main or principal event or transaction itself material and admissible in evidence; and (3) it must have been the result or product, the outgrowth, of the immediate and present influences of the main event, or preceding circumstances, to which it relates, and it must be contemporaneous with it and tend to explain or elucidate it.

The declarant here witnessed the entire occurrences and happenings of the main event—the accident. He saw the movements of the train, the movements and position of the boy, and the collision. What he saw prompted and induced what was done by him. It as well prompted and induced what was said by him. Both were produced by the immediate influences of the preceding circumstances—the main event. Both related to and tended to elucidate or explain the main event, which, of course, was itself material and admissible in evidence. I cannot see how what was done by the declarant can be received, but what was said by him rejected. Both occurred about the same time and were equally related to, and were prompted and induced by the present and immediate influences of, the main event. True, the declaration was made just after the boy was run over; the declarant testified, "just as soon as it happened." But it was the immediate present influence of the happening of that fact which prompted the declaration and to which it related, which it tended to explain or characterize. Whatever grounds for difference of opinion may have arisen in cases as to whether the declaration was contemporaneous or coincident with the main event or transaction, I see no ground for such difference here. The two were as nearly contem-

poraneous as two things could well be. As many times explained by the courts, the word "contemporaneous" is not taken literally, and that time is not the real governing factor in the determination, but is only important in determining whether the statement was spontaneous and intimately connected with the main transaction, and was prompted or produced by its immediate and present influences. I have no doubt that the declaration here was the natural and spontaneous outgrowth of the main event or preceding circumstances, to which it related and tended to explain, and that their relation to each other was of immediate cause and effect, and that the declaration was an instinctive and unmeditated utterance made while the impressions produced by the main event had full possession of the declarant's mind. A declaration made under such circumstances is, I think, admissible, whether made by an actor or participant or by one otherwise connected with the main event or transaction, or by a bystander or observer who witnesses or observes happenings and occurrences of the transaction or event. And to that effect are the text-writers and cases generally.

Says Mr. Wigmore, in his work on Evidence (volume 3, sec. 1755) :

"That nervous excitement which renders an utterance admissible may exist equally for a mere bystander as well as for the injured or injuring person, and therefore the utterance of either, concerning what they observed, are equally admissible. . . . In a few courts, the declarations of a mere bystander have been excluded. But, in the greater number, no such discrimination is made—assuming, of course, that the bystander's declarations relate only to that which has come under his observation."

Mr. Elliott, in his work on Evidence (volume 1, sec. 550), says: "Declarations of bystanders may be so connected with the transaction as to characterize and be part of it. When this is the case they are admitted on the same theory as if they they had been made by one of the actors." To the same effect is 1 Whart. Ev. sec. 260, and 11 Ency. Ev. p. 337.

In notes to the case of *Louisville R. Co. v. Johnson,* reported in 20 L. R. A. (N. S.) 133, where many cases on this question are collated and reviewed, I think it is very clearly shown that the weight of authority is to the effect that exclamations and declarations of bystanders or observers, who witness or observe the transaction or event to which the declarations relate, are admissible as of the *res gestae,* if, of course, made spontaneously or instinctively, and are otherwise shown to be admissible under the rule. I know expressions may be found in some cases, frequently dicta, that to admit a declaration in evidence as part of the *res gestae* the declarant himself must in some way be connected with or related to the transaction, and that it is not enough that he be a mere observer of or witness to the transaction. But the text-writers, and the courts generally, say, as does Mr. Elliott, that it is the declaration, not the declarant, that must be related to, or connected with, the transaction. It is the declaration, not the declarant, which is required to be the product, the outgrowth, of the transaction. Of course, there must, in any case, be a sufficient showing that the statement or declaration related to or was connected with the transaction, and was prompted by its immediate and present influences, and was made under such circumstances that its spontaneity is assured. A condition of nervous excitement may be as readily produced in one witnessing or observing the occurrences of a transaction as is an actor or a participant therein, and the one, as well as the other, may be prompted by the natural and immediate influences of the transaction, to spontaneously and instinctively declare or exclaim something relating to and explaining it. Indeed, as said in the notes to the case of *Louisville R. Co. v. Johnson,* 20 L. R. A. (N. S.) 134:

"It would seem that the apparently involuntary, spontaneous, and contemporaneous declarations or exclamations of a bystander who had just witnesses an accident or affray in which he had otherwise no part or connection would be entitled to greater credence than similar exclamations or declarations by one who was an actor or participant therein, and who might therefore have had an interest in giving a particular

aspect or color to the event, because of the greater probability in the former case than in the latter that the exclamations or declarations which were in appearance spontaneous and involuntary were in fact such, and not the product of rapid reflection and consideration."

If, as the courts and the text-writers say, the test of admissibility of a declaration as of the *res gestae,* is whether the declaration is the result of the transaction talking through the declarant, or the declarant talking about the transaction, then what does it matter whether the transaction talks or speaks through the passive instrument of an actor or participant therein, or of one witnessing or observing the transaction? These views are not in conflict with the case of *Ganaway v. Salt Lake Dramatic Ass'n,* 17 Utah, 37, 50 Pac. 830. There the court held the statements of the "onlookers" not instinctive, but mere expressions of opinions with respect to the legal authority of the officer to eject and arrest the plaintiff. The court there approvingly quoted from Wharton that "exclamations of bystanders, if instinctive, are in like manner admissible" as those of actors or participants.

Of course "mere comments or criticisms by bystanders" are not admissible under the rule. Nor are the comments and criticisms of actors or participants admissible. They are inadmissible, not because made by a bystander, though a witness to, or an observer of, the transaction, but on the ground that they are not spontaneous or instinctive utterances prompted or caused by the immediate and present influences of the transaction. In other words, they are ordinarily the result of the declarant talking about the transaction, and not the transaction talking through the declarant, and oftentimes do not even tend to explain or illustrate it. And for the same reasons, oftentimes, mere opinions of the declarant, whether an actor or a participant or an observer, are likewise inadmissible under the rule. An opinion expressed by a declarant in the course of a mere conversation and as the result of it, or of reflection or afterthought, though at the scene of the transaction and immediately after

it happened, would not be admissible as a part of the *res gestae*.   Neither would any other remark or declaration made under such circumstances.   They are not, in such case, the outgrowth of the transaction to which they relate, but of the conversation or reflection; and hence are not part of the *res gestae*.   But if the declaration is the spontaneous or instinctive utterance of the declarant, and was produced by  the immediate and present influences of the transaction before there was time to reflect, contrive or misrepresent, and was rendered, as said by Mr. Wigmore, "while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance," then the declaration is admissible, though it is partially or wholly the expression of an opinion or conclusion.

I may again observe that when the declarant is but the passive instrument through which ithe event itself speaks, it doee not matter whether it speaks in pious or impious language, or exclaims an opinion or conclusion, or a fact.  ›Of course, the opinion, or conclusion, like any other declaration, to be admissible under the rule, must tend  to explain or elucidate the main event or transaction.   The fact  that the declaration is in form a conclusion or opinion may be important in determining whether the declaration or utterance was spontaneous or instinctive, or was  the result of reflection or afterthought, and whether it tended to explain or characterize the transaction.   But if the declaration has all other essentials rendering it admissible under the rule, it is not to be rejected because it expresses an opinion or conclusion.   And to that effect is the weight of authority (11 Ency. Ev. 318.) and the case of *Wilson v. Southern Pac. Co.* 13 Utah, 352, 44 Pac. 1040, 57 Am. St. Rep. 766.   There, within three minutes after the collision, the plaintiff walking over to a switchman, and, addressing him, asked, "Who is to blame for this?"   The switchman replied, "It was the engineer."   Notwithstanding the contention made that the statements were a subsequent narrative of the event and expressions of opinion as to how it occurred, etc., this court said that they were "the immediate expressions brought into

play by the occurrences of the occasion" with which they were connected, and were properly received as a part of the *res gestae.*"

Though it may, therefore, be said that a portion of the declaration here was the statement of an opinion or conclusion, nevertheless that alone did not render it inadmissible. A statement or declaration of a conclusion or opinion, assuming, of course, that it was made spontaneously or instinctively and relating to the main event, may explain or characterize the transaction out of which it grows, and to which it relates, quite as well as a spontaneous statement or declaration of facts. This is well illustrated in the case of *Johnson v. State,* 8 Wyo. 494, 58 Pac. 761, where the deceased, immediately after the shooting, and upon being asked how it occurred, said the defendant "shot me, but he did not intend to do it." In *State v. Sloan,* 47 Mo. 604, where the deceased, while the surgeons were dressing his wounds, said to them that the defendant " was not in fault." In *Shotwell v. Commonwealth* (Ky.), 68 S. W. 403, where the deceased said, "I am shot all to pieces for nothing that I have done to be killed for." In *Fuller v. State* (Tex. Cr. App.), 48 S. W. 183, where the deceased said that the defendant "shot me for forty cents." In *Selby v. Commonwealth* (Ky.), 80 S. W. 221, where, in an affray, one who grabbed the pistol, whereupon it was discharged, killing a member of the party, said, "Boys, you see that it was an accident." In *Young v. State,* 149 Ala. 16, 43 South, 100, where in an affray, the deceased was shot, and the defendant and the crowd had ran away, a bystander and an observer said: "Come back, it was an accident." In *People v. McArron,* 121 Mich. 1, 79 N. W. 944, where one who witnessed an affray, immediately after its occurrence, said, "Now, see what you have done!" In *State v. Kaiser,* 124 Mo. 651, 28 S. W. 182, where a bystander, while the assailants were still in sight just after leaving their victim, said: "Hurry up! They have about killed this man." In *Cross Lake Logging Co. v. Joyce,* 83 Fed. 989, 28 C. C. A. 250, where the plaintiff, within a moment after the accident,

addressing the superintendent, said, "I wouldn't have lost my leg if you had done as you agreed to and put another man in his place." In *Coll v. Easton Transit Co.,* 180 Pa. 618, 37 Atl. 89, where an employee of the company whose car ran over and killed the deceased said to a bystander, "I did not have time to get him off." In *Omaha & R. V. Co. v. Chollette,* 41 Neb. 578, 59 N. W. 921, where a passenger was injured by the sudden starting of the train as he was alighting, the brakeman said, "It beats hell they cannot stop long enough to let people get off." In *Trumbull v. Donahue,* 18 Colo. App. 460, 72 Pac. 648, where a brakeman, seeing a passenger's injured hand, said to the conductor, "Look what this door has done to this man's hand." In *Elledge v. Railway Co.,* 100 Cal. 282, 34 Pac. 720, 852, 38 Am. St. Rep. 290, where a cliff of rock fell, the foreman, when it came down, and the plaintiff and others were buried in the debris said, "My God! I expected that." In *Roberts v. Port Blakely Mill Co.,* 30 Wash. 25, 70 Pac. 111, where the superintendent of the railroad, who arrived about three hours after the occurrence of the wreck, and in looking at the flanges, said: "This puts me in a devil of a fix. I can't be putting new wheels under the cars all the time. If the company use any more Tacoma wheels, I will not work any longer for them." In *International & G. N. R. Co. v. Bryant* (Tex. Civ. App.), 54 S. W. 364, where the engineer, shortly after the accident, said, "If he had not applied his air he would have killed the whole business."

These cases are not cited, as erroneously assumed by Mr. Justice McCarty, to show the admissibility of declarations of bystanders or observers. I have already, in this opinion, expressed my views on that question, in support of which I cited, quoted from, and relied upon the text-writers, the cases cited by them, and those collected and reviewed in the notes found in 20 L. R. A. (N. S.) 133. The last cases here cited by me are not cited in support of such a question, but, as stated, in my opinion, in support of my views that a declaration having all other essentials to render it admissible under the *res gestae* rule is not to be rejected because it is

in the nature of an opinion or conclusion, and that such a declaration may quite as well explain or characterize the main event to which it relates as a declaration of fact. In all these cases, cited by me in support of such views, the declarations were admitted as a part of the *res gestae*; and in all of them, some more than others, the declarations were of the nature of either conclusions or opinions. They tended, however, to explain or characterize the transactions to which they related. So did the declaration here, though blunt and emphatic as a portion of it was.

Furthermore, the portion of the declaration, "Why did'nt you stop before you ran over him?" certainly is not an expression of an opinion or conclusion. And since the question was proper, if there was any portion of the answer which was not proper, a motion to strike that which was improper ought to have been made.

The question is asked that had a bystander (one who witnessed or observed the accident) or the engineer declared to the effect that the boy stepped immediately in front of the moving train, and that the accident was unavoidable, would that have been *res gestae?* If such statements had been made, and were spontaneous and instinctive utterances prompted by the immediate and present influences of the accident, and were not the result of reflection or design, and were not mere narratives (as some of the statements put by my associate seem to be), I readily answer it in the affirmative, and to that effect are the cases: *Little Rock Ry. & El. Co. v. Newman,* 77 Ark. 599, 92 S. W. 864; *Kansas City So. Ry. Co. v. Moles,* 121 Fed. 351, 58 C. C. A. 29; *M. K. & T. Ry. Co. v. Vance* (Tex. Civ. App.), 41 S. W. 167; *Keyser v. C. & G. T. Ry. Co.,* 66 Mich. 390, 33 N. W. 867; *Springfield Con. Ry. Co. v. Welsch,* 155 Ill. 511, 40 N. E. 1034; *Hermes v. C. & N. W. R. Co.,* 80 Wis. 590, 50 N. W. 584, 27 Am. St. Rep. 69. It was so held in the cited case of *Louisville R Co. v. Johnson, supra,* where the statement of the motorman operating the car which ran over and killed the deceased that, "I seen his face and all, and tried to make the stop, but couldn't make it," was held

properly received, but that the remark of the conductor to the motorman, "Keep your damned mouth still, and don't make any statement until you are called upon to make it," was improperly received because "it did not illustrate or explain how or what caused the accident," and "was an idle speech that had no connection with the case, and did not throw any light on any phase of it."

Whether the declarations make for or against one party or the other to the cause is not a determinative feature of their admissibility. They are alike admissible at the instance of either party. It is not essential that they be deserving. If shown to be admissible under the rule as stated, they may be received, though they might be wholly self-serving were they made under other circumstances. The basis of the rule is not admissions against interest, but trustworthiness of the statements, provable, not as the testimony of the declarant, but as a part of the transaction itself, like any other material fact or evidentiary detail.

I think no error was committed in the ruling complained of, and therefore concur in the judgment of affirmance.

FRICK, J. (concurring).

I concur with Mr. Justice McCARTY in the result reached by him and in all of his conclusions, except upon the questtion of *res gestae*. Upon that subject I agree with and indorse all that is said by the Chief Justice in his concurring opinion.