[Civil No. 1966. Filed March 14, 1923.]

[213 Pac. 395.]

## WALKER D. HINES, Director-General of the Railroads of the United States, Appellant, v. J. A. GALE, Appellee.

1. RAILROADS—COMPLAINT HELD NOT DEMURRABLE.—In action for injury to plaintiff's automobile at railroad crossing, by train backing into it after driver had been told by brakeman to stop, and brakeman was unable to stop the train because the air-hose was not coupled, complaint *held* not demurrable.

2. TRIAL—ERROR IN OVERRULING MOTION FOR INSTRUCTED VERDICT HELD WAIVED.—Error in overruling defendant's motion, at close of plaintiff's case, for instructed verdict for failure of proof, was waived, where defendant did not rest when the motion was overruled, but proceeded to introduce evidence.

3. TRIAL—ON MOTION FOR INSTRUCTED VERDICT, EVIDENCE VIEWED FAVORABLY TO OPPOSING PARTY.—In considering defendant's motion for instructed verdict at close of the whole case for failure of proof, the court should appraise the evidence at its highest value in favor of plaintiff.

4. RAILROADS — CONTRIBUTORY NEGLIGENCE OF AUTOMOBILE DRIVER HELD FOR JURY.—In action for injury to plaintiff's automobile at railroad crossing, by train backing into it after driver had been told by brakeman to stop, and brakeman was unable to stop the

train because air-hose was not coupled, contributory negligence of the automobile driver *held* for the jury.

5. EVIDENCE — STATEMENT OF BRAKEMAN AFTER CROSSING ACCIDENT HELD ADMISSIBLE AS PART OF RES GESTAE.—In action for injury to plaintiff's automobile at railroad crossing, by train backing into it after driver had been told by brakeman to stop, and brakeman was unable to stop the train because air-hose was not coupled, a statement of the brakeman directly after the collision that he could not stop the train because the brakes were not connected up *held* admissible as part of the *res gestae.*

6. EVIDENCE—STATEMENT HELD NOT ADMISSIBLE, NOT BEING RELEVANT TO MAIN TRANSACTION.—In action for injury to plaintiff's automobile at railroad crossing, by train backing into it after driver had been told by brakeman to stop, and brakeman was unable to stop the train because air-hose was not coupled, testimony of a passenger in the automobile, in answer to the question, "What was said and done right at that time?" that "he told us he would see that everything was all right," was not admissible as part of the *res gestae,* as it did not tend to explain or bear upon the main transaction or the principal fact in dispute, but was mere narrative of an irrelevant matter.

7. TRIAL—READING TO JURY PORTION OF COMPLAINT MAKING CHARGE NOT SUPPORTED BY EVIDENCE HELD ERROR.—In railroad crossing accident case, where there was no evidence supporting a charge of the complaint that the brakeman was not able to signal the engineer because the engineer was not watching, it was error for the court to read such portion of the complaint to the jury as stating an issue in the case.

8. RAILROADS—INSTRUCTION IN CROSSING ACCIDENT CASE HELD ERROR. In railroad crossing accident case, an instruction as to the accident's having been occasioned by "defective brakes or any machinery used in operating said train," such cause of the accident not having been pleaded or proved, and advising finding for plaintiff, unless plaintiff was "grossly negligent," was error; plaintiff's recovery being defeated by his negligence, if he failed to exercise the care of an ordinarily prudent man under the circumstances.

APPEAL from a judgment of the Superior Court of the County of Graham. W. R. Chambers, Judge. Judgment reversed and cause remanded for new trial.

5. How near the main transaction must declarations be made in order to constitute part of the *res gestae,* see note in 19 L. R. A. 733.

Statements made some time after accident as *res gestae,* see note in 42 L. R. A. (N. S.) 917.

See 22 C. J., pp. 454, 467; 33 Cyc. 1053, 1111, 1138; 38 Cyc. 1565, 1590, 1608.

Mr. Charles L. Rawlins, for Appellant.

Mr. A. A. Worsley and Mr. W. K. Dial, for Appellee.

ROSS, J.—This action is by J. A. Gale for damages to his automobile, suffered in a collision with a train of defendant at a public street crossing in the town of Safford, Graham county, Arizona. The machine, at the time of the collision, was being driven by the plaintiff's wife, an experienced driver, and in it were her mother, a sister, her fifteen year old daughter and nine year old son. The course of the track through the town of Safford was east and west. Plaintiff's wife had gone from their home, on the south side of the track, to the ice plant, located near and on the north side of the track, to get some ice, and, in attempting to recross the track, was run into by defendant's backing train.

The acts of negligence charged against defendant in the complaint are: That on June 24, 1919, and during daylight, Mrs. J. A. Gale, who was driving plaintiff's automobile, attempted to pass over a public crossing in the town of Safford; that at the time there were, quite a distance east of where she wanted to cross on defendant's track, an engine and cars; that she had ample time to cross defendant's tracks in safety and was moving to do so, when a brakeman employed by defendant, in charge of the switching of cars in defendant's yard at Safford, seeing her "approaching to cross said tracks with plaintiff's automobile, and while said brakeman was standing near the back end of said cars nearest Mrs. Gale he motioned to her, and at the same time told her to stop, and insisted upon her stopping, and that the said Mrs. J. A. Gale, in obedience to the commands and motions of the said brakeman did stop said machine,

and that at the time she stopped, in obedience to the commands of said brakeman, the engine and cars were moving backward toward her, and that before she had time to reverse her engine and back away the said engine and cars caught her machine and dragged the same several hundred feet . . . ''; that the brakeman tried to stop the train but was unable to do so because the air was not coupled from the engine to the cars and was out of repair; that he was not able to signal the engineer because the latter was not watching and was not paying attention to what he was doing; that there was sufficient distance to stop the train at the time the brakeman signaled the engineer, if the engineer had been looking, and if the air had been coupled, and if the same had been in repair; that Mrs. Gale was acting at the time under the assurance of safety from the brakeman as to crossing said tracks, and that but for his instruction and commands, and his assurance of safety, she would have crossed said tracks in ample time to have been in the clear, and have avoided the injury, and but for his command she would not have stopped, and if she had not stopped she would have crossed the tracks in the clear.

The answer was a general demurrer, a denial of all material allegations, except it is alleged or admitted therein that the brakeman was near the back end of the car nearest Mrs. Gale, and that he motioned her and warned her to stop, and insisted on her stopping, before she reached the track upon which the train at the time was moving backward in her direction. The sole negligence of plaintiff is also pleaded as the cause of the damage to the automobile. The demurrer was overruled, and, upon trial before a jury, a verdict was returned in favor of plaintiff. From the judgment and order denying motion for new trial, the defendant appeals.

The first assignment of error is the overruling of demurrer. We think, it appearing from the complaint that the accident occurred at a public cross-ing, the duty of exercising ordinary care and caution and common prudence to avoid injury to persons using such crossing was imposed by law upon de-fendant. It is clear from the allegations of the com-plaint that the immediate cause of the injury to plaintiff's machine was the order of the brakeman for the driver thereof to stop, and the defendant's inability to stop the backing train because the air-hose was not coupled between the cars and the engine. According to the complaint, there would have been no collision if defendant's brakeman had not stopped Mrs. Gale, nor any after she stopped, if the air on train had been coupled up with the engine. It is apparent that the brakeman made a mistake in stopping Mrs. Gale, and she, likewise, in obeying him; but can it be said that be-cause she did as bidden by one in whose judgment, because of his position, she had a right to rely—indeed, could not well disregard—that she was guilty of negligence? We think she had a right to assume that, by obeying him, the means were at hand to protect her from harm, whereas by disobeying him the result would be disastrous. While the com-plaint may state facts that arouse a suspicion that Mrs. Gale in driving on to the crossing was flirting with danger and venturing too far, it is made plain that she in no way contributed to the collision ex-cept by obeying the orders and directions of the brakeman, who, it is alleged, had charge of the rear end of the train.

The case of *Wilson* v. *Southern Pac. Co.*, 13 Utah, 352, 57 Am. St. Rep. 766, 44 Pac. 1040, we think is very similar in its legal aspect to the case at bar, the only difference being that in that case the switch-

man directed the plaintiff to "come on," and while he was obeying the order he was run into, whereas here the brakeman directed the driver of the machine to "stop," and she was run into. The court there said:

"Whether the switchman said to the men in the wagon, 'Come on,' or 'Hold on,' presented a question of fact, under the evidence, for the jury to determine. The jurors probably found that he said, 'Come on.' If they did so find, they certainly were justified that the plaintiff used due care in attempting to cross."

In *Sweeny* v. *Old Colony etc. R. R. Co.,* 10 Allen (Mass.), 368, 87 Am. Dec. 645, wherein a signalman had motioned the plaintiff to proceed over the defendant's track, the court, speaking through Mr. Chief Justice BIGELOW, said:

"If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be duly and properly performed, shall not suffer loss or injury by reason of his negligence. The liability in such cases does not depend on the motives or considerations which induced a party to take on himself a particular task or duty, but on the question whether the legal rights of others have been violated by the mode in which the charge assumed has been performed."

We think the complaint states a cause of action, and that the court did not err in overruling the demurrer. At the close of plaintiff's case defendant moved for an instructed verdict for a failure of proof, and, at the close of the whole case, this motion was renewed. The refusal to grant these motions is assigned as error.

If the defendant wanted to rely on its first motion it should have rested when the motion was over-

ruled. It did not do this, but introduced its evidence and thereby waived the right to question the correctness of the court's ruling on that motion. *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124.

In considering the motion for instructed verdict at the close of the whole case, it was the duty of the court to appraise the evidence at its highest value in favor of the plaintiff. The effect of such motion was to admit the truth of all competent and relevant evidence introduced, tending to sustain plaintiff's cause of action, whether offered by plaintiff or defendant. If the evidence, when thus treated, established a right of recovery in plaintiff, it was the duty of the court to deny the motion.

"  . . . A verdict will not be directed in a case where the evidence is conflicting or where on all of the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions." *Davis* v. *Boggs,* 22 Ariz. 497, 199 Pac. 116.

"If, therefore, the plaintiff's evidence and the reasonable inference therefrom, considered, as they must be on this motion, in the strongest light against the defendant, were sufficient to support a verdict, the motion was properly overruled. It is only where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside, that the court is justified in directing a verdict." *Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz. 163, 195 Pac. 538.

With this rule in mind, let us look for a moment into the evidence. Defendant's train had arrived in Safford at 3:15 P. M.; had done some switching in the railroad yards; had made up its train, without coupling the air between the engine and cars, and gotten back on the main line track, where it was standing about 4:30 P. M., when plaintiff first saw it. It obstructed the crossing on J Street, where she was at the time, and she took a circuitous route to another crossing

a short distance west of J Street, and when she arrived there and undertook to cross, what happened, we will let her tell in her own language:

"As I came up, on up to the track, the brakeman motioned for me to stop, gave a signal, hollered for me to stop, and I did. I looked to see why he should have me stop, because I looked and there was no train coming, no train moving; so I looked to see why he wanted me to stop. Just then I saw the train coming almost to us. I threw the brakes in reverse, to go back, but before I could get back the train had hit us."

This statement is corroborated by that of Leonora Gale, who was an occupant of the automobile at the time of the collision. Both say the automobile was stopped as quickly after the signal of the brakeman as possible—within two or three feet. The front wheels were just over the south rail of track No. 2, and the train coming against it pushed the automobile about 130 feet before it was stopped. The circumstance of the crossing being open and unobstructed so that Mrs. Gale could observe the train and determine whether it was moving, after she started to cross the track, as well as considerable testimony, very strongly tend to show that Mrs. Gale did not look and listen before attempting to pass over the track.

Granting, for present purposes, that the evidence shows that Mrs. Gale did not exercise due care and caution in going upon the crossing in the circumstances then existing, and that she was guilty of negligence in doing so, still it is quite apparent there would have been no collision if she had not been halted by the brakeman. At most, then, she was guilty of contributory negligence—a question of fact to be at all times left to the jury. This is the settled rule in this state, as fixed both by the Constitution and the decisions. *Davis* v. *Boggs, supra.*

Mrs. Gale was asked the question: "How far from the crossing was the brakeman when he gave you this signal to stop?" to which she answered, over defendant's objection, "About the length of three cars." A motion was made to strike her answer; it was denied. These rulings are assigned as error. It is the contention of defendant that because the complaint alleged that the "brakeman was standing near the back end of said cars nearest Mrs. Gale," and the answer admitted such allegation, the evidence elicited contradicted the pleadings. The complaint does not definitely place the brakeman further than that he was near the rear end of the train. It was necessary that the jury know the distance the brakeman and the rear end of the train were from the place on the crossing where the collision occurred. The distance between these two points might constitute an important factor in determining whose fault caused the collision, which, after all, was the ultimate fact sought to be proved.

The court permitted the plaintiff to prove the statements of the brakeman concerning the accident, to the following effect: Mrs. Gale testified:

"He said, 'You need not worry about your car.' He said, 'You did just exactly what I told you.' He says, 'You could have done nothing else; I signaled for you to stop and you did.' He said, 'I had plenty of time to stop the train, and there would have been no need of this; I couldn't do it because the brakes weren't connected up.'"

The question that elicited this answer was objected to by the defendant on the ground that no agency was shown—the brakeman not being in charge of the train, his declaration could not be binding upon the defendant.

This declaration was made in connection with and grew out of the collision, and was, in substance, a

repetition and continuation of what the brakeman had said to Mrs. Gale just a moment before the accident. It was voluntary and spontaneous, and under the circumstances precludes the thought that it might have been made with deliberate design. It illustrated the purpose of the brakeman in causing Mrs. Gale to stop. The statement was in the nature of a verbal act, and as such was admissible as a part of the *res gestae,* as that term is generally understood and construed.

"*Res gestae* may be broadly defined as matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are the events themselves, speaking through the instinctive words and acts of the participants; the circumstances, facts and declarations which grow out of the main fact are contemporaneous with it and serve to illustrate its character. All declarations or exclamations uttered by the parties to a transaction which are contemporaneous with and accompanying it, or which are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design, and which are calculated to throw light on the motives and intention of the parties, are admissible in evidence as part of the *res gestae.*" 10 R. C. L. 974, § 157; 22 C. J. 454, § 545.

In *Cromeenes* v. *San Pedro etc. R. R. Co.,* 37 Utah, 475, Ann. Cas. 1912C, 307, 109 Pac. 10, immediately after an accident in which a young boy was run over, through the negligence of the engineer, as it was alleged, a brakeman on another train, who saw the accident, said to the engineer: "You have done a damn fine job. Why didn't you stop before you

ran over him?" This testimony was held admissible under the *res gestae* rule.

In *Wilson* v. *Southern Pac. Co., supra,* three minutes after the collision, the plaintiff asked the switchman: "Who is to blame for this?" The switchman replied: "It was the engineer." This was held admissible under the *res gestae* rule.

In *Durkee* v. *Central Pac. R. Co.,* 2 Cal. Unrep. 599, 9 Pac. 99, the statements of the engineer as to how the accident happened, in which a boy was run over and killed, made immediately afterward were admitted under the *res gestae* rule.

See, also, *Kansas City So. Ry. Co.* v. *Moles,* 121 Fed. 351, 58 C. C. A. 29; *Walters* v. *Spokane International Ry. Co.,* 58 Wash. 293, 42 L. R. A. (N. S.) 917, 108 Pac. 593; *International & G. N. R. Co.* v. *Anderson,* 82 Tex. 516, 27 Am. St. Rep. 902, 17 S. W. 1039. In the last case the court said:

"All declarations or exclamations uttered by the parties to a transaction, and which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it, are clearly admissible as parts of the *res gestae.*"

Clearly the brakeman's declaration or statement was relevant, not only as showing why Mrs. Gale stopped where and when she did, but in showing his disappointment in not being able to stop the train because the air was disconnected. The natural effect of the declaration was to prove or explain the very points in issue. In *Murray* v. *Boston & M. R. R.,* 72 N. H. 32, 101 Am. St. Rep. 660, 61 L. R. A. 495, 54 Atl. 289, quoting from an earlier decision (*Sessions* v. *Little,* 9 N. H. 271, 279) the court said:

"Where evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate or give a character to the act,

and which may derive a degree of credit from the act itself, are also admissible, as part of the *res gestae.*"

Assignment No. 6 is like the preceding one, except that the statement of the brakeman made at the same time and place was told by a bystander. Such testimony is admissible as a part of the *res gestae* under the same rule as applies to the principals in the transaction. *Cromeenes* v. *San Pedro etc. R. R. Co., supra;* 3 Wigmore on Evidence, §§ 1745–1797.

The testimony of Leonora Gale, in answer to the question, "What was said and done right at that time?" as follows: "He told us that he would see— he took our names; he said he would see that everything was all right," is assigned as error. We think the motion to strike this testimony should have been granted, because it did not in any way tend to explain or bear upon the main transaction, or the principal fact in dispute. The witness' answer was a mere narrative of an irrelevant matter.

Mrs. Gale was permitted to testify, over objection, that she did not hear any whistle blow, nor any engine or trains moving. The question was objected to on various grounds, but not on the ground now urged for the first time, namely, that the complaint charged specific acts of negligence, and a failure to blow the whistle was not one of them. If this objection had been made at the time under the rule, where specific acts of negligence are charged, other acts may not be proved, it is doubtful if it should have been admitted for any purpose. In *Edwards* v. *Chesapeake & O. Ry. Co.* (Ky.), 108 S. W. 303, it is said:

"The rule is well settled that a plaintiff in an action for personal injuries caused by the negligence of the defendant may allege the negligence complained of in general terms, and, having done this, may show any specific acts of negligence which the testimony warrants; but if, on the other hand, he alleges specifically the acts constituting the negligence complained

of, he cannot avail himself of other acts not alleged in the pleading.''

The trial court admitted the testimony as a circumstance tending to refute the charge of sole or contributory negligence of plaintiff set up in defendant's answer. The ruling is in accord with the holding in *Reidel* v. *Chicago, R. I. & B. Ry. Co.*, 144 Ill. App. 424, in which it is said:

''The evidence was not introduced for the purpose of charging appellant with a failure to perform a statutory duty, but for its bearing upon the question whether appellee was exercising due care. This proof showed that no whistle was sounded and no bell was rung which should have attracted his attention and caused him to ascertain that the cars were coming in. For that purpose we think the proof was properly admitted.''

The giving of certain instructions is assigned as error. Preliminary to a statement of the law for the guidance of the jury, the court read all of the charging part of the complaint, in which different acts of negligence are laid against the defendant. It is, of course, the duty of the court to state to the jury the contentions of the parties, and we can see no impropriety in its reading, for that purpose, the complaint. If, however, acts of negligence are charged in the complaint and no testimony introduced to support them—which is this case—the court should be careful to call the jury's attention thereto so that the jury will be under no misapprehension as to the particular questions they are called upon to decide. For instance, the complaint in this case, among other acts of negligence, charges ''that he [brakeman] was not able to get a signal to the engineer in charge of said engine because said engineer was not watching, and was not paying any attention to what he was doing.'' There is an entire absence of any evidence upon this charge of negligence, and yet it was read to the jury as one of the issues in the case.

The court gave the following instruction:

"You are further instructed that if you should believe from the evidence that the engineer saw said automobile when it was near said track and approaching same, and that they exercised due care and attempted to stop said train, but, *owing to defective brakes or any machinery used in operating said train,* he could not control or stop said train in time to prevent it from striking said automobile, then you should find for the plaintiff, unless you should find from the evidence that the plaintiff was *grossly negligent* and attempted to cross said track when the danger was clear and apparent to him, and he voluntarily assumed said risk."

This instruction was clearly erroneous. The collision was not charged to have been occasioned by "defective brakes or any machinery used in operating said train," nor was there any evidence to support such charge. The instruction is further erroneous in advising the jury to "find for the plaintiff, unless you should find from the evidence that the plaintiff was grossly negligent."

We think the standard of negligence to defeat plaintiff's right of recovery is a failure to exercise the care of an ordinarily prudent man under the same circumstances. If the plaintiff failed to exercise that degree of care, and his machine was injured thereby, he would be guilty of contributory negligence and not entitled to recover.

Since the case must be sent back for a new trial on account of errors noticed, we do not deem it necessary to discuss all the assignments of error. Those unnoticed do not appear to be important, or are covered by what we have already said.

The case is reversed and remanded, with directions that a new trial be granted.

LYMAN, J., concurs.

McALISTER, C. J., being disqualified, took no part in the decision of this case.