[Civil No. 4320. Filed April 21, 1941.]

[112 Pac. (2d) 589.]

WESTERN TRUCK LINES, LTD., a Corporation, and O. L. WELCH, Appellants, v. MARY ETHEL DuVAULL, Administratrix of the Estate of HARRY G. DuVAULL, Sometimes Called HARRE GERMAINE DuVAULL, Deceased Appellee.

Messrs. Darnell, Pattee & Robertson, and Mr. Frederick G. Nave, for Appellants.

Messrs. Houston & Dodd, for Appellee.

ROSS, J.—The plaintiff, Mary Ethel DuVaull, administratrix of the estate of her deceased husband, Harry G. DuVaull, brought this action against the Western Truck Lines, Ltd., and O. L. Welch to recover damages for her husband's death, which she alleges was caused by the negligence of the defendants. The case was tried before a jury and resulted in a verdict and judgment in favor of plaintiff and against both defendants. The latter have appealed.

That the evidence does not support the verdict nor the judgment, that the court erred in its instructions, in its rulings on the introduction of evidence, in its cross-examination of defendants' witness Ramsey, in refusing to give instructions and to submit requested interrogatories, are contentions of appellants.

There is no dispute as to what the evidence shows, the only question being whether under the law plaintiff has made out her case. The defendant truck line was engaged in the general warehouse and trucking business in the city of Tucson and defendant Welch

was in its employ as a truck driver. DuVaull was a truck driver for the United States Veterans' Hospital at Tucson. On March 6, 1939, in line of duty, he went to the freight yards of defendant truck line for some freight belonging to his employer, but when he arrived he was informed that someone had called for and got the freight. He, nevertheless, spent some fifteen or twenty minutes visiting with employees of the truck line, with whom he was acquainted and on friendly terms. While he was there, defendant Welch drove into the premises a Chevrolet pickup truck loaded with six pieces of four-inch water pipe. It was while Welch was trying to get his truck into position in reference to the unloading dock, so that the pipe 'could be transferred from the truck to the dock without lifting it, that DuVaull was hurt. On the dock at the time were DuVaull and two employees of the truck line, one of whom was W. A. Ramsey. The pipe was considerably longer than the truck bed and in uneven lengths, two pieces protruding one and one-half feet further over the end of the truck bed than the other four. The bed of the truck and the top of the dock were not on a level, the latter being slightly higher, and the approach to the dock was a gradual but slight upgrade. Welch backed the truck up toward the dock and Ramsey, from the dock, placed the ends of the two overlength pieces of pipe on a hand truck so that as Welch backed they would slide onto the dock and allow the truck to back towards the dock, when the other pieces would also be in position to slide onto the dock. From this position of the truck, the end of which was two or three feet from the dock, we quote Welch as to what happened:

" . . . As I started to back up the motor died, and I was holding the truck with the foot brake and left it in reverse gear and was trying to start the motor of the truck, and as I looked back Mr. DuVaull was

standing back of the truck or near the truck. He was out from behind the truck because the pipe was sticking out, and he was standing alongside the truck, and he evidently was going to lift this pipe up, the short pipe, and I turned around then to start the motor, and I did not see Mr. DuVaull any more until I heard him holler, and I jerked into second gear and pulled away from the dock. I stopped the truck and got out, and I saw Mr. DuVaull come out from behind the truck, kind of stumbled-like, I would say, and in pain, you could tell. . . . ''

This witness testified that the truck had a closed cab with a rear-view mirror and a rear window; that looking out of the back window he could see DuVaull; that he was not back of the truck when he started the motor; that apparently he stepped in there between the time he saw him and the time the truck started; that the last time he saw him he was to the right or opposite side from the driver's seat and ''he was in the clear.'' He testified the truck had a good foot brake but that the emergency brake would not hold. He said he could keep one foot on the brake clutch and start the motor; that his foot slipped off the clutch and the truck jerked back just all at once.

The only other eyewitness to the accident was Ramsey, who testified that DuVaull was on the dock with him until just before or about the time Welch's motor died, when he jumped down off the dock to the right of the truck saying "something about giving Mr. Welch a hand with this short length of pipe that I couldn't reach at that time." "I says, 'Harry, I wouldn't get in there if I was you. That is monkey business.' '' This witness testified that DuVaull, to start with, after he got on the ground, was on the right side of the truck but that he could not lift the pipe there so he went under the pipe and got on the left side, facing south, and tried to lift it, when the truck backed and caught him.

At the close of plaintiff's case and at the close of the whole case, defendants moved for a directed verdict on the ground that the evidence was insufficient to justify a recovery, and the court's refusal to grant this motion is made the basis of their first assignment.

■■ In *Hines* v. *Gale,* 25 Ariz. 65, 213 Pac. 395, 397, we said:

"In considering the motion for instructed verdict at the close of the whole case, it was the duty of the court to appraise the evidence at its highest value in favor of the plaintiff. The effect of such motion was to admit the truth of all competent and relevant evidence introduced, tending to sustain plaintiff's cause of action, whether offered by plaintiff or defendant. If the evidence, when thus treated, established a right of recovery in plaintiff, it was the duty of the court to deny the motion."

It goes without saying that the obvious effort was to place the end of the truck against the side of the dock to facilitate the unloading of the pipe and, since the immediate approach to the dock was slightly upgrade, reverse power had to be utilized for that purpose. It was obvious that to go in between the truck and the dock during the operation was dangerous.

Plaintiff's theory is that Welch knew, or should have known, that DuVaull was between, or would go between, the truck and the dock to assist in adjusting the pieces of pipe to allow the truck to back against the dock, and that in the operation of the truck for that purpose he acted at his peril.

Defendants' position is that DuVaull was at the time and place a licensee or trespasser and (1) that defendants owed no duty to him except not to wilfully and wantonly injure him, and (2) that, at the time defendant Welch started his motor, DuVaull was in a safe place behind and at the right of the truck and defend-

ants had a right to assume he would not step in the path of danger but would remain away therefrom.

There is nothing in the testimony of either Welch or Ramsey that stamps their recital of the facts as untrue and, if their testimony must be accepted as true, the only conclusion to be drawn is that DuVaull, without the consent and against the warning of these witnesses, voluntarily placed himself in the dangerous situation without regard for his own safety.

The status of DuVaull when he was hurt, that is, as to whether he was an invitee or licensee or trespasser, is not an issue since it seems to be conceded that he was not an invitee after he completed the business he had gone to defendant's yard to transact but a licensee or trespasser. The standard of care the defendant owed him under such circumstances is a question upon which the parties disagree. The defendants contend their duty extended no further than to refrain from wilful or wanton infliction of injury on DuVaull, and cite the following Arizona cases to support their contention: *Conchin* v. *El Paso & Southwestern R. R. Co.,* 13 Ariz. 259, 108 Pac. 260, 28 L. R. A. (N. S.) 88; *Southwest Cotton Co.* v. *Pope,* 25 Ariz. 364, 218 Pac. 152; *Salt River Valley Water Users' Assn.* v. *Compton,* 40 Ariz. 282, 11 Pac. (2d) 839. Without analyzing these cases, it seems that in each of them the plaintiff, while a licensee or trespasser, sustained bodily injury from coming in contact with or being attracted by some object or instrumentality, natural or artificial, employed or used by the possessor in the enjoyment of his premises. One of the rights incident to ownership of land is its use for the purposes of its owner, in business or trade, under proper regulation and safeguards for the protection of those belonging thereon or coming thereon. His duty to those coming thereon is relative, depending upon whether they are invitees, licensees or tres-

passers. In the above cases it was stated the possessor owed no duty to licensees or trespassers where the injury resulted from the condition of the premises and not from wilful and wanton negligence. Under the facts, we think those cases were correctly decided. *Brigman* v. *Fiske-Carter Const. Co.*, 192 N. C. 791, 136 S. E. 125, 49 A. L. R. 773.

 There are, however, exceptions to the above rule. When the possessor, as in the present case, knows of the licensee's presence on his premises his duty requires that he exercise ordinary care to avoid injuring him. To that end the licensee is entitled to be warned against hidden or secret pitfalls on premises and to be kept away from positions and situations of danger where the license permits him to be. The possessor also, in carrying on his own activities, must exercise reasonable care not to injure the licensee, 45 C. J. 803, sections 207, 208, 209; Restatement of Torts by the American Law Institute, volume 2, section 346, and is liable when he does not exercise such care "unless the licensees know . . . of the possessor's activities and of the risk involved therein." Section 341, Id. DuVaull needed no warning of the danger to which he was exposing himself. It was as open and obvious to him as to Welch and Ramsey. He could see and realize the risk involved as well as they. However, he was warned not to get between the dock and the back of the truck. It appears that Welch and Ramsey, employees of the truck line, did about all they could to protect DuVaull from his own reckless folly. We quote from Comments c and d under section 341, *supra,* as follows.

"c. . . . the possessor need do no more than exercise reasonable care to warn the licensee of his intention to do an act which he should realize is likely to cause harm to the licensee if he comes into or remains within the area endangered by it. He is entitled to

expect that such warning will cause the licensee to avoid the danger unless he realizes or should realize that warning would be ineffective either because the danger is so imminent that a warning will give the licensee no opportunity to avoid it or because the licensee does not hear the warning or is not able or does not intend to take advantage of it.

"d. Account is also to be taken of the fact that a licensee must accept or reject the possessor's consent to enter the land under the conditions which are known to him or which he could discover by the use of his senses. The possessor, therefore, is not required either to refrain from or to give warning of activities dangerous to the licensee if they are, to the knowledge of the licensee, so customarily carried on upon the land that the licensee should be on the alert to discover and avoid them.''

■ If it be granted, however, that defendant Welch, in the operation of the truck, in the circumstances owed the duty to DuVaull of exercising ordinary care not to injure him, and that such duty existed notwithstanding he was a licensee or trespasser and that he failed to exercise it, what is to be said of his duty to DuVaull as a mere volunteer? DuVaull was not an invitee on defendant's premises at the time he was injured nor had he been asked or invited to help unload the pipe from the truck. What he was doing was purely voluntary and therefore defendants were not liable in damages to him "unless guilty of gross negligence, wilfulness or wantonness." 45 C. J. 840, sec. 253; *Richardson* v. *Babcock & Wilcox Co.*, 1 Cir., 175 Fed. 897; 22 L. R. A. 663, note; *Hatcher* v. *Cantrell*, 16 Tenn. App. 544, 65 S. W. (2d) 247; *Bernhardt* v. *American Ry. Express Co.*, 218 App. Div. 195, 218 N. Y. Supp. 123; 13 L. R. A. (N. S.) 561, note; 43 L. R. A. (N. S.) 187, note; L. R. A. 1915F, 1125, note. In the Richardson case the facts were that defendant's employees were passing a heavy tubing, lowered by means of ropes, through a doorway, when

Richardson, a stranger to the work, without invitation, undertook to assist and while so doing was fatally injured by reason of the slipping of the tubing and the breaking of the rope. The court said, in passing on the question of defendant's liability under such facts [175 Fed. 898]:

"The law does not furnish redress in damages for every misfortune. In order to create liability for personal injury, the plaintiff must not only show that he was in the exercise of due care, but that the defendant was lacking in some duty which it owed to him, either as an employe or as a member of the public. This case, as already observed, is not within the class governed by the rules of ordinary care, because there was no contractual relationship between Mr. Richardson and the defendant. Nor is it the case of invitation, where a member of the public by invitation comes in to help. The facts plainly show, and there was no dispute about it, that he took hold to help as men oftentimes give a lift at the wheel when they find a neighbor stuck in the mud; and under such circumstances there is no liability on the part of the neighbor for an injury received, unless the injured party establishes gross negligence, willfulness, or wantonness in respect to his safety. . . . "

DuVaull was not an employee of the truck line. Welch and Ramsey had no authority to employ him and bind their employer. His assistance was not in an emergency. He was not attempting to rescue someone in danger but to assist in an ordinary undertaking, in which the employees were then engaged, without their asking him to and in disregard of a warning.

The many cases cited by plaintiff as authority for her contention of proven liability are differentiated upon the facts. We think under the facts here there is no liability, for the reason that the danger into which DuVall knowingly threw himself was as obvious to him as to defendants, and the further reason that he was a volunteer.

This conclusion obviates the necessity of passing upon the other assignments.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

LOCKWOOD, C. J., and McALISTER, J., concur.