[Civ. No. 21678. First Dist., Div. Two. Dec. 14, 1964.]

KAREN KEMLINE, a Minor, etc., et al., Plaintiffs and Appellants, v. JAMES B. SIMONDS et al., Defendants and Respondents.

Gunnar G. Gunheim and B. V. Yturbide for Plaintiffs and Appellants.

James P. Shovlin, Jr., and Herbert Chamberlin for Defendants and Respondents.

AGEE, J.—While 8-year-old plaintiff Karen and her parents were social guests at the home of defendants Mr. and Mrs. Simonds, Karen received injuries which resulted in this action. Karen and her father, who sued for medical expenses, appeal from the judgment entered upon a jury verdict in favor of the Simonds. The principal issue is whether the court erred in instructing the jury upon the doctrine of assumption of risk.

Defendants had a swimming pool in their back yard. The most direct route from the house to the pool was through a doorway in the family room which opened onto a patio, beyond which was the pool.

The doorway consisted of two full-length transparent glass panels incased in narrow metal frames. One panel was fixed in place. The other was mounted on a runner and was used as a sliding door. When this panel was open and approached from the outside, it would be almost entirely behind the fixed panel, except for the side of the frame to which the handle to the sliding panel is attached. The glass in both panels had been recently cleaned and there was nothing on either, such as colored tape, reflectors or other markings, which would aid in seeing whether the sliding panel was open or closed.

Karen got out of the pool about 10 o'clock in the evening. Defendant Simonds wrapped a towel around her and told her to "run along inside and get warm." In so doing, Karen ran into and collided with the sliding glass panel, shattering the glass and receiving serious lacerations.

Mrs. Simonds had left the pool just a few minutes before and gone into the house by the same route taken by Karen. It is an obvious inference that she closed the sliding panel behind her. During the day this panel had been sometimes left open and sometimes kept closed. This was the first occasion that Karen had tried to enter the house after dark by way of the doorway to the family room. Neither her own home nor any of the other homes which Karen had visited had sliding glass doors and her only experience with one was had on the day in question.

Karen testified that "I was looking straight at the glass door" and that it was "as if I was looking right into the house." She further testified that "I didn't realize that it was closed until I hit it, hit the glass door, and ran right through it."

Photographs admitted in evidence without objection show

the visibility which Karen had at the time of the accident. The same lighting conditions were reproduced, both inside and outside the family room. It is evident from these photographs that anyone approaching the doorway from the outside after dark, with the lights on inside the room, would have difficulty in ascertaining whether the sliding glass panel was open or closed. This difficulty is added to by the roof which extends for approximately 4 feet out and over the patio outside of the doorway.

Defendants specially pleaded the defense of assumption of risk and at the request of defendants the court instructed the jury thereon. In these instructions the jury was told that, "As to all the conditions of such premises, existent when the Plaintiffs arrived at the Defendants' home, Plaintiffs assumed the risks incident thereto."

 Karen's status was that of a child licensee and defendants could be subject to liability to her for an injury caused by the condition of their premises *if* the four elements prescribed by section 339 of the Restatement of Torts[1] are found by the trier of fact to be present. (*Courtell* v. *McEachen*, 51 Cal.2d 448, 457 [334 P.2d 870].)

Although section 339 refers to "young children trespassing," the Supreme Court pointed out in *Courtell* that "a child licensee thus injured has at least an equal right of recovery." (P. 457.) We shall discuss the elements of section 339 in the order stated therein.

First, did the defendants know that Karen was likely to use the doorway in question to enter the house after leaving the pool? The answer is obviously yes. Mrs. Simonds had just gone in that way and Mr. Simonds had directed Karen to "run along inside."

Second, should the defendants have realized that the sliding panel as viewed from the outside, after dark and with the lights on inside, constituted an unreasonable risk of serious

---

[1]Section 339 reads as follows: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

bodily injury to a young child unfamiliar with this condition? We think that the evidence is sufficient to sustain an answer in the affirmative and that a jury question is therefore presented. (See recent sliding glass door case: *Isenberg* v. *Ortona Park Recreational Center, Inc.*, (Fla. 1964) 160 So.2d 132.)

Third, did Karen because of her youth not discover said condition or realize the risk involved in entering the lighted family room from the outside after dark? Again we think that the evidence is sufficient to support an answer in the affirmative. As stated in *Kanner* v. *Best Markets, Inc.*, 188 Pa. Super. 366 [147 A.2d 172, 174], "the invisibility of clear glass, by its very nature, deceives the most wary."

In *Courtell* v. *McEachen, supra,* in holding that a child licensee may have a right of recovery under section 339 of the Restatement of Torts, the court cites and relies upon comment (b) to section 342 of the Restatement of Torts. This comment reads in pertinent part as follows: "[T]he possessor should realize that the fact that a dangerous condition is open to the perception of children licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein. Children, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover. Even if they know of the condition, there may be risks which it is not reasonable to assume that children will appreciate."

Fourth, would it have been practicable for the defendants to have safeguarded the condition confronting Karen so as to protect her from the danger thereof without impairing the usefulness of the sliding panel and without unreasonable expense?

We think that the trier of fact reasonably could find that simple precautions, such as colored tape,[2] metal strips or other markings[3] on or across the glass panel would have remedied or at least substantially reduced the danger of such condition at small cost to defendants.

In summary we hold that the evidence is sufficient to sustain a finding that defendants were guilty of negligence and subject to liability under the provisions of section 339 of the Restatement. And, as stated by our Supreme Court in

[2]In *Grabel* v. *Handro Co.*, 161 N.Y.S.2d 998, the court discussed the effectiveness of "masking tape" on glass panel used as door.

[3]In *Isenberg* v. *Ortona Park Recreational Center, Inc., supra*, a decal was used.

*King* v. *Lennen*, 53 Cal.2d 340, 343 [1 Cal.Rptr. 665, 348 P.2d 98] "The rule set forth in section 339 of the Restatement of Torts has been adopted as the law of this state with respect to the liability of a possessor of land. . . ."

■ The evidence also makes the issue of contributory negligence one of fact, not of law. No contention is made to the contrary. The question of whether the defense of assumption of risk is applicable herein thus becomes of vital importance.

Under the instructions given, the jury could have found negligence and no contributory negligence *but* denied plaintiffs a recovery under the doctrine of assumption of risk. We of course are unable to determine from the record whether the verdict was or was not arrived at upon this basis.

However, if the evidence is insufficient as a matter of law to support a verdict based upon the doctrine of assumption of risk, then the giving of instructions thereon was materially prejudicial to plaintiffs' case and requires a reversal.

Our Supreme Court has recently had occasion to reverse a judgment for defendants on the ground that it was error to instruct on the doctrine of assumption of risk. (*Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777].)

There the plaintiff was an adult. He was a tenant of premises on which he operated a bar and restaurant. While certain alterations were being made by the landlord, plaintiff was struck in the eye by a piece of metal which flew off the top of a tool being used in such work. The language in the opinion quoted hereafter is in our opinion directly applicable to the instant case.

■ "The doctrine of assumption of risk is, of course, an affirmative and limited defense. It applies only when the accident arises from a danger known to the victim before the accident, and where the evidence shows that the victim voluntarily chose to enter or to remain in the zone of known danger. Actual, and not merely constructive, knowledge of the danger is required. ■ The doctrine is to be distinguished from contributory negligence [citation], although the two may arise from the same set of facts and frequently overlap. But the two doctrines are essentially different. Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the degree of care used. It is based, fundamentally, on consent. Contributory negligence is not.

■ "To warrant the application of the doctrine the evidence must show that the victim appreciated the specific danger involved. He does not assume any risk he does not know or appreciate. [Citation.] Stated another way, before the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved. [Pp. 270-271.]. . . .

■ "In this state the rule is clearly established that before the jury may be properly instructed on the doctrine there must be evidence not only that the plaintiff knew that he was stepping into a place of danger, but also had actual knowledge of the specific danger involved. [P. 274.]"

■ We have concluded that there is no evidence which would support a finding that plaintiffs had assumed the risk of the condition involved herein and that the giving of instructions on such doctrine requires a reversal of the judgment. It is so ordered.

Shoemaker, P. J., and Taylor, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 10, 1965.