466 P.2d 401

Martha DOWNEY, Appellant,

v.

William LACKEY, dba XYZ Corporation, dba Wilmot Medical Center Pharmacy, Appellee.

No. 2 CA–CIV 747.

Court of Appeals of Arizona, Division 2.

March 5, 1970.

Review Denied May 5, 1970.

Rehearing Denied April 9, 1970.

Soble & Cole, by Harold Cole, Tucson, for appellant.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by William Kimble and William J. Schafer, III, Tucson, for appellee.

HOWARD, Chief Judge.

The appellant filed a complaint against the appellee in the lower court for personal

injuries. At the end of appellant's case the court, on motion of the appellee, directed a verdict in favor of the appellee.

We consider the facts in the light most favorable to the appellant. On August 30, 1965 appellant entered appellee's business establishment known as the Wilmot Medical Pharmacy, Inc. Appellant had taken her grandson to see Dr. Zee, whose office was in the Wilmot Medical Center, and entered the pharmacy to wait for him. Appellant's daughter, Alice, was working that day for the appellee.

Upon entering the store, the appellant proceeded to go to a lounge consisting of tables, chairs and a couch. This lounge was located in the rear of the store, and was for the use of the doctors whose offices were in the area.

When she arrived at the lounge, the appellant observed appellee's bookkeeper stuffing envelopes with statements. Appellant asked the bookkeeper if she could help and the bookkeeper replied in the affirmative. Appellant then began putting statements into the envelopes. After a half hour or so one statement dropped to the floor. As appellant reached to one side to pick the envelope up, her chair flew out from under her causing her to fall flat on the floor and hit her head on the wall.

As appellant was leaving the store under her own power, she said to the appellee-Lackey, "Bill, you ought to do something about those damn chairs. And with the plastic in them, I just fell. Someone is going to break their neck one of these days." Appellee-Lackey replied, "Well, I have been meaning to put rubber tips on them. I will get to it one of these days."

At the trial the bookkeeper testified that after the accident appellee-Lackey told her that "he knew the chairs were like that and that he had intended to put rubber tips on them." She further testified that he had told her that during meetings in the lounge with the doctors he had had problems with the chairs slipping out from under people. The bookkeeper further testified that she stated that she was quite aware of the chair, that if she didn't sit directly in the center of the chair, it would topple.

Appellant contends that the trial court erred when it ruled as a matter of law that the appellant was a licensee and not an invitee and, that even if the appellant was a licensee, the evidence showed that the appellee failed to warn appellant of a hidden peril. Appellee contends that the trial court was correct as to the legal status of the appellant and that the condition of the chair was open and obvious.

## LEGAL STATUS OF THE APPELLANT

The determination of the legal status of the appellant is important because the duty of the owner or occupier of land toward the plaintiff will vary with the legal status of the plaintiff.

The definition of the word "invitee" depends upon which of two theories is espoused as the basis for liability. Under the "economic benefit theory" the duty of affirmative care to make the premises safe to an invitee depends upon actual or potential pecuniary profit to the possessor. The courts have been generous in including various situations within the ambit of this definition. See William L. Prosser, Law of Torts at 396 et seq. (3rd ed.).

The second theory is the "invitation theory." Under this theory the duty of affirmative care to make the premises safe to an invitee is not based on any economic benefit to the occupier but rather upon an implied representation made to the public by holding the land open to them, that reasonable care has been exercised to make the place safe for those who come for that purpose. William L. Prosser, Law of Torts, supra.

The Restatement (Second) of Torts § 332 has adopted both theories and defines an "invitee" as follows:

"(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a

member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

The appellant does not qualify as an invitee under either theory as defined by the Restatement. Under subsection (2) of the Restatement, she must enter the premises for the purposes for which the invitation is extended. There was no testimony that the appellee invited the public to use the premises as a waiting room. She does not qualify under subsection (3) because she did not enter for any reason which could have held any potential pecuniary profit to the appellee.

■ In spite of this, appellant maintains that since she was on the premises visiting her daughter, she was an invitee. For her authority she cites the annotation in 94 A.L.R.2d at 13 entitled "Duty to Employee's Visitor," as applicable. The main problem with the appellant's contention is that there was absolutely no evidence whatsoever that she was on the premises to visit her daughter. The only evidence offered at the trial was that she went to the pharmacy to wait while her grandson went to see Dr. Zee. We conclude that appellant was not an invitee.

Both parties concede in their briefs and we agree that the lowest status which the appellant may have attained at the time of the accident was that of a licensee. A licensee is defined in § 330, Restatement of Torts as:

"* * * a person who is privileged to enter or remain on land only by virtue of the possessor's consent."

On the contrary, she affirmatively stated that she went there to wait while her grandson went to see Dr. Zee. We believe the evidence shows that, at most, appellant was a licensee. When she entered the premises, she said "hello" to Mr. Lackey and then went into the back room. Although there was no evidence that Mr. Lackey saw her go to the back room, there was equally no evidence that it was not permissible for her to enter the lounge and use it. Even though she may have been stuffing envelopes and as such doing a job for the appellee-Lackey, the evidence clearly shows that she was a mere volunteer.

Additionally, there was no showing that the bookkeeper had any authority to employ the appellant in such a manner as to change her legal status from that of a licensee to an invitee.

■ In oral argument the appellee contends that since appellant was a volunteer when the accident took place, under authority of Western Truck Lines Ltd. v. Du Vaull, 57 Ariz. 199, 112 P.2d 589 (1941), they are responsible only for gross or wanton negligence toward her. In that case, the plaintiff was injured by the very operation for which he volunteered. In the case at bench, plaintiff was not injured by the envelope stuffing operation but by a chair in which she had permission to sit in whether she was stuffing envelopes or not. We see no similarity between the cases.

## LEGAL DUTY OWED TO APPELLANT

■ Having established the legal status of the appellant, we find that in the case of Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967), the duty imposed upon the possessor of the land toward a licensee is not to make the premises safe but merely to refrain from knowingly letting the licensee run upon a hidden peril, or wantonly or willfully causing harm to the licensee. If the possessor of the land knows of a concealed danger upon the premises, he is guilty of negligence if he permits the licensee, unwarned of the peril, to come in contact therewith and he may be held liable to the licensee for any injury thus sustained. Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941, 944–945 (1951).

## PROXIMATE CAUSE

Appellee contends that the appellant failed to show that she fell because of the condition of the chair and that she just as easily could have fallen because of some other reason. The question of proximate cause is one of fact for the jury and is not a question of law for the court, if, upon all the facts and circumstances, there is a likelihood of the conclusions of reasonable men differing. Stearman v. Miranda, 97 Ariz. 55, 396 P.2d 622 (1964). We believe that reasonable men could infer from the testimony of the appellant and the bookkeeper that appellant fell because of the condition of the chair.

## CONCEALED DANGER

Our next consideration is whether or not the chair could be considered a "concealed danger." We stress the word "concealed." It is not enough that there must be a dangerous condition, but this condition also must be a condition that is not open and obvious to the licensee before liability can attach to the possessor of the land from injury resulting therefrom. Daugherty v. Montgomery Ward, 102 Ariz. 267, 428 P.2d 419 (1967).

The appellee suggests that in order for a condition to be a "hidden peril," it must constitute a "pitfall" or "trap" and there must be some evidence of active deceit or camouflage on the part of the occupier of the land. We do not agree. This contention is answered by William L. Prosser, Law of Torts, supra, at 389–390:

"* * * But another special rule which developed in England was that the occupier was not permitted to 'set a trap' for the licensee. This phrase originally was used in the sense of presenting an appearance of safety where it did not exist; but the significance which gradually became attached to it was not one of intent to injure, or even of any active misconduct, but was merely that the possessor of the land was under an obligation to disclose to the licensee any concealed dangerous conditions of the premises of which he had knowledge. * * *"

This view is also supported by the Restatement (Second) of Torts § 342.

The appellee contends that the situation in this case is analogous to the one in the case of Daugherty v. Montgomery Ward, supra. We do not agree. In that case the plaintiff sat down in a chair which flew out from under her. The evidence showed that the floor upon which the chair rested was highly polished; that the plaintiff in fact commented on the high polish on the floor before sitting in the chair; that the chair had rollers on it which were open and obvious to her and that putting the highly polished floor and the rollers on the chair together, one had to come to the conclusion that the condition was not a "concealed danger." In the case at bench, however, there is no testimony that the floor was slick. The chair had plastic tips as do many other chairs. There was nothing unusual appearing about either the chair or the floor such as would alert someone to the fact that if they sat on the chair, it would tip over. The testimony of the bookkeeper was to the effect that the chairs would fly out from under people and that appellee-Lackey knew this. Appellee claims that there was no showing that there was any "defect" in the chair. This contention is not supported by the evidence. The bookkeeper testified that, if one did not sit straight and in the middle of the chair, it would topple over. This does not seem to us to be the way normal chairs react under normal conditions. In any event, it is not necessary that there be any defect in the article itself. In the case of Shannon v. Butler Homes, Inc., supra, the court recognized that there was no defect in the plate glass doors but that with the lighting conditions a deceptive illusion was created which would give the appearance of there being no glass in the door. The facts of the case at bench show that the chair gave the appearance of being just an ordinary chair. But, that in fact it was not an ordinary chair. There was

**532**

no showing that she used the chair in any unusual manner.

■ In Shannon v. Butler Homes, Inc., supra, our Supreme Court stated that in borderline cases what constitutes a hidden peril is a question of fact for the jury. We believe the court committed reversible error in granting the motion for a directed verdict against the appellant.

For the foregoing reasons, the judgment is reversed and remanded for new trial.

KRUCKER and HATHAWAY, JJ., concur.