112 N.J. Super. 311 (1970)
271 A.2d 20
FRANK GIORDANO, BY HIS GUARDIAN AD LITEM JOHN GIORDANO AND JOHN GIORDANO, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
VIRGINIA HARRIS MARIANO AND THE ESTATE OF DANIEL HARRIS, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 1970.
Decided November 24, 1970.
*312 Before Judges LEWIS, MATTHEWS and MINTZ.
Messrs. Schlesinger, Manuel and Schlosser, for appellants (Mr. Alfred A. Faxon, III, on the brief).
Messrs. Taylor, Bischoff, Williams & Martin, for respondents (Mr. G. Paul Crawshaw, of counsel and on the brief).
The opinion of the court was delivered by MINTZ, J.A.D.
Plaintiffs appeal from a judgment dismissing their complaint following a motion for involuntary dismissal at the close of plaintiffs' case.
In passing upon defendants' motion to dismiss, the court was required to consider the proofs in the light most favorable to plaintiffs and to accord them the benefit of the most favorable inferences reasonably to be drawn from the proofs. If viewed in this light reasonable minds could differ, then the motion must be denied. Dolson v. Anastasia, 55 N.J. 2, 5 (1969); Melone v. Jersey Central Power and Light Co., 18 N.J. 163 (1955). Applying that standard we are satisfied that the proofs presented a jury question and that the dismissal was error.
On June 9, 1962 infant plaintiff Frank Giordano, then about 11 1/2 years old, was invited to attend a birthday party at defendants' home in Cherry Hill. He had never previously *313 been to the home. A sliding full-length glass panel door served as an entrance to the recreation room. A concrete patio estimated to be about ten feet square adjoined the entrance, and to the rear thereof was a back yard.
There was testimony to the effect that it was still light when infant plaintiff arrived. Eventually he joined the group of children in the rear yard. After it became dark there was a call for the children to come inside for ice cream and, in response, infant plaintiff and a youngster Steven Cappuccio began running or racing toward the house. As they reached the house plaintiff was slightly ahead of his friend and was still running toward what he believed to be an open doorway. As it turned out, the sliding, full-length glass panel door had been closed. Infant plaintiff crashed into the door sustaining extensive cuts on his face.
Infant plaintiff testified that "it was like pitch black" when the accident occurred; that there was no light in the rear yard, the only illumination coming from the recreation room to which the glass door led. He explained he had passed through the doorway earlier in the evening, at which time the door was fully open and that, to his belief, it had not been closed and was still open up to the time of the accident. While he stated he was aware that the doorway he had passed through employed a sliding glass door, he also admitted he had not looked to see if there were any markings on the door. He further said he saw no markings on the door as he ran toward it and, in addition, did not notice a handle on the door.
Infant plaintiff's mother testified that upon being advised of the accident she went to the hospital and there met defendant Mrs. Mariano (formerly Mrs. Harris) and her husband. According to the mother, Mrs. Mariano turned to her husband and told him the doors were dangerous and added, "I always told you I didn't like those doors. * * * it could have been one of our children."
Portions of a deposition given by defendant Mrs. Mariano were read into the record. Of significance is her statement *314 that while she was not specifically aware if the doors were open or closed at the time of the accident, the last time she saw the doors before the accident they were closed. She added that to her knowledge no one used them from the time she saw them closed until the accident. Of further pertinence is her testimony that the door was unmarked save for a metal lip of natural aluminum color which protruded about three or four inches, used for a handle. She also admitted that she gave no warning to the children to beware of the door.
Also read into the record were portions of a deposition given by Steven Cappuccio. His testimony substantiated in large part that of the infant plaintiff, as he indicated that the door had been opened and to his knowledge had remained so for the evening, basing this statement on his observation of people passing through the doorway without opening or closing the door. He could not remember if there was any light outside but said there was light coming from the house. He further testified that he did not strike the door himself because, as he neared the doorway, he could see a reflection caused by an unidentified source. It was his belief that he could see the reflection because he approached the door at an angle, whereas plaintiff could not see the reflection because he approached the door head-on.
In granting defendants' motion for involuntary dismissal the trial judge stated he was convinced there was not sufficient proof presented by an expert or otherwise that the unmarked glass door was sufficient to create an unreasonable risk of danger to a gratuitous licensee. He further stated that he was sure that the average property owner does not realize that an unmarked glass door creates an unreasonable risk.
The infant plaintiff was a social guest. 2 Restatement, Torts, § 331 (1934) defines a social guest as a gratuitous licensee, and this classification has been accepted. Berger v. Shapiro, 30 N.J. 89, 96 (1959). In Berger the court *315 held that the home host guest relationship law is encompassed in the Restatement, supra, § 342. That section then read as follows:
A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he
(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
(b) invites or permits them to enter or remain upon the land, without exercising reasonable care.
(i) to make the condition reasonably safe, or
(ii) to warn them of the condition and the risk involved therein.
In 1963 the Restatement was revised and the responsibility of the possessor of land expanded, for 2 Restatement, Torts 2d, § 342 now imposes liability upon him if he "knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees." The inquiry is not whether defendants realized the condition held any risk but whether a reasonable man would be cognizant of it. Berger, supra; Taneian v. Meghrigian, 15 N.J. 267, 277 (1954). Since, however, defendant Mrs. Mariano observed the door closed prior to the accident, she had actual knowledge of the condition and is accountable under either formulation.
There is the further problem as to whether we are here concerned only with a condition, i.e., the unmarked glass doors and the absence of any exterior lighting, or additionally, an activity on the part of defendants. Defendants, in permitting the glass doors to remain open and later causing or permitting them to be closed, may have actively and negligently participated in the creation of a dangerous situation. Cf. Mistretta v. Alessi, 45 N.J. Super. 176, 180 (App. Div. 1957); Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1957); 2 Restatement, Torts 2d, § 341. But see Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (Sup. Ct. 1967).
*316 The issue here presented has been decided in other jurisdictions with conflicting results. In several instances courts have denied recovery to invitees and licensees on the ground that the plaintiff simply had to see the glass panel because it had a frame of metal, a handle and was situated where a door was expected to be. See e.g., Rosenberg v. Hartman, 313 Mass. 54, 46 N.E.2d 406 (Sup. Jud. Ct. 1943); Valunas v. J.J. Newberry Co., Inc., 336 Mass. 305, 145 N.E.2d 685 (Sup. Jud. Ct. 1957); Pettigrew v. Nite-Cap, Inc., 63 So.2d 492 (Fla. Sup. Ct. 1953); Acme Laundry Company v. Ford, 284 S.W.2d 745 (Tex. Civ. App. 1955); Bua v. Fernandez, 15 N.Y.2d 664, 255 N.Y.S.2d 877, 204 N.E.2d 207 (Ct. App. 1964); Brand v. Pope, 103 Ga. App. 489, 119 S.E.2d 723 (Ct. App. 1961).
Other courts, with whom we agree, have reached opposite results, holding that a jury question is presented. The most notable of these is Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967), where the Arizona Supreme Court carefully examined a situation in which an 8-year-old child licensee walked through a glass panel which she believed to be an open space. In that case the court held the duty of defendant depended on the circumstances, principally stating that where a child is involved, a duty to warn may be created, whereas none would exist were the case to involve an adult. See 2 Restatement, Torts 2d, § 342, comment (b) at 210. Additionally, the court indicated that an allegation of a deceptive illusion created by an unmarked glass door when viewed under certain lighting conditions, constituted a sufficient allegation of a hidden peril to an infant who was without warning thereof, and if sustained by the evidence raised a jury question respecting the host-owner's liability. Kemline v. Simonds, 231 Cal. App.2d 165, 41 Cal. Rptr. 653 (D. Ct. App. 1964), also involved a child licensee running into a glass door. Again the court undertook an examination of relevant factual criteria, including the age of the child, the fact that the panel in question had been sometimes left opened *317 and sometimes kept closed during the day, and the fact that the lighting contributed to the child's belief of an open door. The court concluded that the evidence presented a jury question respecting the liability of the host-owner to the child licensee. In so doing the court noted (at 656): that "the trier of the fact reasonably could find that simple precaution such as colored tape, metal strips or other markings on or across the glass panel would have remedied or at least substantially reduced the danger of such condition at small cost to defendants." Finally, the case of Downey v. Lackey, 11 Ariz. App. 528, 466 P.2d 401 (Ct. App. 1970), should be noted for its statement that "in borderline cases what constitutes a hidden peril is for the jury." 466 P. 2d at 405.
These cases should not be read to mean that every time a licensee walks through a glass door a jury question is presented. Undoubtedly, situations will occur where plaintiff's failure to observe is so patent that no different conclusion could be reached. What these cases do indicate is that courts, reviewing evidence similar to that adduced in the instant case, i.e., a pattern of an open door, lack of markings, poor lighting, age of the injured party, have found a jury determination appropriate.
The absence of any expert testimony on behalf of plaintiffs is not crucial. Although "it is obvious that an expert need not be called to inform a jury as to the nature of a condition caused by a missing brick in the top step of a porch," Berger, supra, 30 N.J. at 102, it is equally obvious that an expert need not be called to inform a jury that a transparent unmarked glass door, open and later closed, adjacent to an unlighted patio area on a "pitch black night," may constitute an unreasonable risk of harm to an 11 1/2-year-old boy. We do not perceive that plaintiffs' case is grounded upon substandard or inherently dangerous construction of the glass door. Rather, the issue is whether the door in the context of the attendant circumstances created a dangerous condition to infant plaintiff. The questions of *318 foreseeability and reasonableness are ordinarily matters for and easily comprehended by a jury. Angel v. Rand Express Lines, 66 N.J. Super. 77 (App. Div. 1962).
The proofs are such that the minds of reasonable men may differ as to the conclusion to be drawn from the facts. Accordingly, the issue should have been submitted to the jury for determination.
Reversed and remanded for a new trial.